Ross F. BROOKS and Another, Respondents, *v.* WALTER B. WYMAN and Others, as Trustees of Central School District No. 3 of the Town of Crown Point, Essex County, and as Such Trustees Comprising the Board of Education of Said District, Appellants.

Third Department, March 9, 1927.

Schools — taxpayer's action — General Municipal Law, § 51, does not authorize such action against school district to restrain selling of bonds for erection of new school building, on theory that action taken at special meeting was illegal — exclusive remedy is by appeal to Commissioner of Education, under Education Law, § 890.

Residents and taxpayers of a school district are not authorized, under section 51 of the General Municipal Law, to maintain a taxpayer's action to restrain the trustees, comprising the board of education of the school district, from selling bonds and taking other steps for the erection of a new school building, pursuant to the Education Law, upon the ground that the action taken at a special meeting of the voters of the district was illegal.

A municipal corporation, as defined in section 2 of the General Municipal Law, does not include a school district.

The exclusive remedy of the plaintiffs, under the circumstances, is to appeal to the Commissioner of Education, under section 890 of the Education Law.

APPEAL by the defendants, Walter B. Wyman and others, from an order of the Supreme Court, made at the Saratoga Special Term and entered in the office of the clerk of the county of Essex on the 16th day of October, 1926, denying defendants' motion for judgment dismissing the complaint on the ground that the court has not jurisdiction of the subject of the action and that the complaint does not state facts sufficient to constitute a cause of action.

*Ralph E. Rogers,* for the appellants.

*Roy Lockwood* [*Fred W. Dudley* of counsel], for the respondents.

HINMAN, J. The equitable remedy of an injunction under section 51 of the General Municipal Law (Consol. Laws, chap. 24; Laws of 1909, chap. 29) is sought by the plaintiffs, who sue as residents and taxpayers to restrain the defendant trustees, comprising the board of education of the school district in which the plaintiffs reside, from selling bonds and taking other steps for the erection of a new school

building pursuant to the Education Law. (Education Law, § 467, as amd. by Laws of 1923, chap. 116, and Laws of 1926, chaps. 115, 754; Id. § 480, subd. 1, as amd. by Laws of 1926, chap. 115.) The board of education gave notice of a special meeting of the voters of the district to be held March 11, 1926. The question raised is as to the legality of the action taken at that meeting. The notice of the meeting specified that the amount to be expended was to be $105,000. A resolution was passed at the meeting by a majority vote, authorizing the expenditure of " the sum of not more than one hundred five thousand dollars." It is claimed that it failed of adoption because it did not receive a vote of two-thirds of the qualified electors present and voting, as required by said section 480 of the Education Law. That section provides: " In districts having an aggregate full valuation of real property of five hundred thousand dollars or over, *no bonds shall be hereafter issued* which make the total bonded indebtedness, at any time, exceed fifteen per centum of the aggregate full valuation of the real property within the bounds of such school district, unless the resolution authorizing the issue and sale of such bonds, in excess of such amount, shall be adopted by a vote of two-thirds of the qualified electors present and voting on such resolution at the meeting called for such purpose." It appears that the total assessed valuation of this school district is over $500,000; that $92,000, together with the existing indebtedness of the district of $3,000, will not exceed fifteen per cent of its total valuation; but that $105,000 is more than said fifteen per cent. It further appears, however, that after the district meeting authorized an expenditure of " not more than " $105,000, the board of education of the district adopted a resolution providing for the issuance of only $92,000 of bonds. It is the issuance of bonds in that amount which the plaintiffs seek to enjoin, claiming that no proposition to raise $92,000 of bonds was submitted to the electors of the district; that the proposition submitted at the meeting related to a larger expenditure, requiring a two-thirds vote which had not been obtained; and that the board of education were without power to take any further proceedings under the resolution voted upon at the meeting.

The burden of indebtedness cast upon this district by the action of its board of education will not be greater than the law permits. If there had been an appeal to the Commissioner of Education under section 890 (formerly 880) of the Education Law and the Commissioner had determined that there is here no threat or purpose of illegality or waste, giving the plaintiffs reason to complain, we would agree with him. Construing said sections 467

and 480 of the Education Law it could be said that there was no fundamental illegality in fixing, in the resolution approved by the district meeting, a maximum sum greater than the indebtedness allowed by law; that no indebtedness in excess of the lawful amount is threatened; and that little danger may be apprehended of an inadequate building or of an unsuitable site, for the plans must be approved by the Commissioner of. Education under section 451 of the Education Law. We do not reach the question, however, to finally decide it. There has been no appeal to the Commissioner of Education. We have said in a similar taxpayer's action that such a school matter must be decided in the first instance, at any rate by appeal to the Commissioner. (*Lewis* v. *Smith,* 190 App. Div. 884, affg., on opinion below, 109 Misc. 694.). The appellants in the case at bar, however, raise an issue not raised in *Lewis* v. *Smith* (*supra*). They contend that there is no authority for a taxpayer's action against a school district or its trustees or board of education.

The plaintiffs do not allege any rights beyond those of taxpayers who will be liable for the payment of taxes to meet the expense of the new schoolhouse if erected. If they have any capacity to sue in their character as taxpayers whose position is not different from that of the whole body of taxpayers in their district, it must be pursuant to some statutory authority. " At common law a taxpayer as such has no right of action against a public officer to restrain or prevent the waste of public funds or injury to public property, or to restrain a threatened illegal official act. In England the Attorney-General, in right of the prerogative of the Crown, could sue in equity to enjoin the execution of a trust of property by public corporations or the governors thereof. The taxpayer, however, had no right to demand, either at law or equity, the vindication of the public right unless the violation of that right affected him injuriously in some peculiar manner in which other members of the community were not equally affected." (*Altschul* v. *Ludwig,* 216 N. Y. 459, 464.)

The first statute adopted in this State on that subject was the act of 1872, chapter 161. Various other acts followed, the substance of which was eventually embodied in sections 1925–1931 of the Code of Civil Procedure.* When the Civil Practice Act was passed, sections 1925–1931 of the Code of Civil Procedure were omitted, leaving section 51 of the General Municipal Law as the sole statutory authority for maintaining a taxpayer's action " to prevent any illegal official act " or " to prevent waste or

---

* See Thomson's Taxpayers' Actions, p. 24; Throop's Code Civ. Proc. § 1925 *et seq.,* and notes.— [Rep.

injury to, or to restore and make good, any property, funds or estate " of any " *county, town, village or municipal corporation.*" (Gen. Mun. Law, art. 4, § 51; Laws of 1881, chap. 531, as amd. by Laws of 1887, chap. 673, § 1, and by Laws of 1892, chap. 301, § 1.)  Section 2 of said General Municipal Law (Laws of 1892, chap. 685, § 1 pt.) provides: " The term ' municipal corporation,' *as used in this chapter,* includes *only,* a county, town, city and village.'" That term as used in said section 51 excludes, by necessary implication, a school district.  Moreover, the Legislature of 1911 (nearly twenty years after section 2 of the General Municipal Law was passed) saw fit to amend this legislative restriction upon the meaning of the term " municipal corporation " as generally defined in the General Municipal Law by adding a new article to such law.  (Gen. Mun. Law, art. 2-A, as added by Laws of 1911, chap. 769, legalizing bonds or proceedings for issuance of bonds.)  In that article it is provided (§ 29) as follows:  " The term ' municipal corporation ' *as used in this article* includes a city, county, village, town, school district, sewer district, water district, lighting district or any other district or territory authorized by law to issue bonds."  This expressed distinction emphasizes the importance of section 2, which continues to exclude a school district from the operation of the other provisions of the General Municipal Law.  There seems to be no authority for a taxpayer's action against a school district or the officers of such a district.  This is indicated by the statute itself.  The exclusion of it seems likewise to be indicated by judicial interpretation of the purpose of the statute.  " The statute was designed to redress a substantial grievance.  It was designed to give a taxpayer a remedy under conditions where none had been available before.  It was not designed to reach conditions and correct evils where the existing law gave an effective remedy at the instance of any citizen."  (*Southern Leasing Co.* v. *Ludwig,* 217 N. Y. 100, 105.)  The respondents have been given an adequate remedy by appeal to the Commissioner of Education under section 890 of the Education Law.  His authority to hear and decide such appeals and that of his predecessors in authority have been a part of our statute law since 1822.  (Laws of 1822, chap. 256; *Bullock* v. *Cooley,* 225 N. Y. 566, 576.)  We find no authority binding upon us to the effect that a taxpayer's action will lie against the officers of a school district.  An examination of the record in *Smith* v. *Donahue* (202 App. Div. 656) reveals that the right of a taxpayer to bring such an action was not presented to the court. *Bullock* v. *Cooley* (*supra*) was a taxpayer's action, testing a determination made by the Commissioner of Education on appeal

to him. In that case the Court of Appeals sustained the finality of the Commissioner's decision and then said: " There are several other questions relating to the authority of the plaintiff to maintain this action, but what we have said makes it unnecessary to consider them on this appeal." (p. 578.) The question seems to be an open one. The issue has been squarely raised in this case. The complaint should have been dismissed on the ground that there is no authority for a taxpayer's action against the officers of a school district and that the exclusive remedy of plaintiffs is to appeal to the Commissioner of Education.

The order should be reversed, with ten dollars costs and disbursements, and the complaint dismissed, with ten dollars costs of the motion.

VAN KIRK, Acting P. J., MCCANN, DAVIS and WHITMYER, JJ., concur.

Order reversed on the law, with ten dollars costs and disbursements, and complaint dismissed, with ten dollars costs.