WILLIAM A. SMITH, Appellant, *v.* ROBERT J. DONAHUE and Others, as the Board of Education of the City of Ogdensburg, N. Y., FRANCIS C. BYRN, as Superintendent of Public Schools, and WILLIAM S. HALL, as Treasurer of the City of Ogdensburg, N. Y., Respondents.

Third Department, July 6, 1922.

Schools — taxpayer's action to restrain free distribution of text-books and school supplies for use of pupils in parochial schools in city of Ogdensburg — distribution restrained as violation of State Constitution, art. 9, § 4, and not authorized by Education Law, § 868, subd. 4, and Laws of 1903, chap. 187 — free text-books and supplies are furnished to school and not to pupils — parochial schools not part of school system of State and pupils thereof not pupils of school district — salaries — board of education authorized to fix salary of superintendent of schools at more than $1,500.

The free distribution by the board of education of the city of Ogdensburg of textbooks and ordinary school supplies for the use of pupils attending at parochial schools of the Roman Catholic church is not authorized by section 868, subdivision 4, of the Education Law and chapter 187 of the Laws of 1903, and is in contravention of section 4 of article 9 of the Constitution of this State, which provides that neither the State nor any subdivision thereof shall use its property or credit or any public money directly or indirectly in aid or maintenance other

than for examination or inspection of any school or institution of learning wholly or in part under the control or direction of any religious denomination or in which any denominational tenet or doctrine is taught.

The contention by the defendants that books and supplies are furnished under said section of the Education Law to the children attending the schools and not to the schools is without merit.

The parochial schools of the Roman Catholic church of the city of Ogdensburg do not constitute a part of the education system of the State, and the pupils of those schools are not pupils of the school district within the meaning of the Education Law or chapter 187 of the Laws of 1903.

The board of education of the city of Ogdensburg had the right to fix the salary of the superintendent of schools of the city and was not limited to the sum of $1,500 which is provided by statute as the amount that shall be in any event inserted in the tax budget for the salary.

APPEAL by the plaintiff, William A. Smith, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of St. Lawrence on the 3d day of January, 1922, upon the decision of the court rendered after a trial at the St. Lawrence Special Term, dismissing the complaint on the merits.

The plaintiff is a taxpayer in the city of Ogdensburg. The defendants are the board of education, the superintendent of public schools and the treasurer of the city. The action is brought to restrain the defendants from procuring with public funds and delivering free text-books and ordinary school supplies for the use of pupils of schools other than the public schools of the district; also from expending a sum of money in excess of $1,500 for the purchase of text-books and supplies; also from paying the superintendent of schools compensation in excess of $1,500. The city of Ogdensburg is one of the school districts of the State and through its board of education maintains the public school system, consisting of the grade schools and the academic department. The court found: " That there is also maintained by the Roman Catholic Church, a religious denomination, a system of schools in said city known as Parochial Schools, which system is independent of said school system administered by said defendants. and none of which parochial schools are in any manner under the jurisdiction or control of said defendants, but are wholly under the care, custody and control of said Church, and which schools are attended by a portion of the children residing in said city, all of whom have the right and privilege of attending said city schools maintained by said city as aforesaid should they so desire. That the said city has, for several years past, and at the commencement of this action and the trial thereof was, raising by tax, upon the taxable property in said city annually a sum in excess of $1,500 00

**42**

for the purchase of school books and supplies, and expending the same upon requisitions by said Board of Education in the purchase of school books and supplies, some of which are for the use of the school children in said city in attendance upon the said parochial schools outside the jurisdiction and control of said Board of Education, and which books and supplies are actually used by said children in said parochial schools."

*Frank L. Cubley,* for the appellant.

*Robert E. Waterman,* for the respondents.

Van Kirk, J.:

The principal question and in fact the only question urged seriously by the plaintiff is whether or not public funds may be used to furnish text-books and ordinary school supplies to pupils of private schools, or schools other than the public district schools, located in the city of Ogdensburg.

By the Laws of 1917, chapter 786, article 33-A (§§ 865–881) was added to the Education Law. The article provides for boards of education in the several cities of the State. In section 868, subdivision 4, is the following: "To purchase and furnish such apparatus, maps, globes, books, furniture and other equipment and supplies as may be necessary for the proper and efficient management of the schools and other educational, social and recreational activities and interests under its management and control. To provide textbooks or other supplies to all the children attending the schools of such cities in which free textbooks or other supplies are lawfully provided prior to the time this act goes into effect." This is one of the subdivisions of the section defining the powers and duties of boards of education in cities. Unless this subdivision authorizes the board of education of the city of Ogdensburg to furnish text-books and supplies to schools other than the public schools in the district, or the pupils of such, it is conceded that the judgment appealed from is erroneous.

To control and furnish education for the youth of the State is a governmental function, which was not delegated to the Federal government, but reserved to the States; and the legislative department of each State has full control of its school and educational activities. In the exercise of this power the Legislature of this State has enacted the Education Law (Consol. Laws, chap. 16 [Laws of 1910, chap. 140], as amd.). In this law public schools were authorized in school districts and, by the act of 1917 (*supra*), in cities which are constituted school districts. These districts are civil divisions of the State founded for the exercise of this governmental function. The boards of education have full control of the public schools

(§ 865) and in the cities have the care, custody, control and safe-keeping of all school property or other property of the city used for educational, social or recreational work and not specifically placed by law under the control of some other body or officer, and shall prescribe rules and regulations for the preservation of such property (§ 868, subd. 3); also, in subdivision 5 of section 868 such boards are empowered and directed " To establish and maintain such free elementary schools, high schools, training schools, vocational and industrial schools, kindergartens, technical schools, night schools, part-time or continuation schools, vacation schools, schools for adults, open air schools, schools for the mentally and physically defective children or such other schools or classes as such board shall deem necessary to meet the needs and demands of the city; " also by subdivisions 7 and 8 of said section to direct and control the courses of study and the text-books to be used. Each board of education of a school district or city is a body corporate (§ 300); and all their duties are confined to the public, educational, social and recreational activities of the city, devoted to the welfare of the children; they have no authority or control over any other schools than public schools.

The first inquiry is whether or not the furnishing of " text books and ordinary school supplies " to parochial schools is in conflict with the Constitution. In the First Amendment to the Federal Constitution is this: " Freedom of religion, of speech, of the press, and right of petition. Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." In article 1 of the State Constitution is this: " Freedom of worship; religious liberty. § 3. The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this State to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State." The direct provision of the Constitution which bears upon this case is in article 9, which refers to common schools and the university. Section 1 is: " The Legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated." Section 4 is: " No aid to denominational schools. § 4. Neither the State nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination,

or in which any denominational tenet or doctrine is taught."
At no time has it been the intent of government in our republic
to permit the union of secular and religious education in any public
school. The State has ever been zealous, since its organization,
to protect against appearance of an encroachment upon the right
of free worship of God as the conscience of the citizens may choose
and direct. No law has ever been permitted, or practice to that
end condoned, respecting any establishment of religion or pro-
hibiting the free exercise of religious belief without discrimination
or preference or interference in any manner. In *O'Connor* v.
*Hendrick* (109 App. Div. 361; affd., 184 N. Y. 421) the action
was brought by a teacher to recover for services in a public school.
The teacher wore the garb of a religious order or society in the Roman
Catholic church. The Superintendent of Public Instruction had
made a rule forbidding the use of such garb or dress. It was held
that the teacher could not recover; that the order of the Super-
intendent was reasonable under article 9, section 4, of the Con-
stitution above quoted, referring to which the Court of Appeals
said: " Here we have the plainest possible declaration of the pub-
lic policy of the State as opposed to the prevalence of sectarian
influences in the public schools. The regulation established by
the State Superintendent of Public Instruction through the agency
of his order in the Bates appeal is in accord with the public'policy
thus evidenced by the fundamental law. There can be little doubt
that the effect of the costume worn by these Sisters of St. Joseph
at all times in the presence of their pupils would be to inspire
respect if not sympathy for the religious denomination to which
they so manifestly belong. To this extent the influence was sec-
tarian, even if it did not amount to the teaching of denomi-
national doctrine." Under article 1, section 3, of the Constitution,
and similar provisions in Constitutions of other States, which
assure the free exercise and enjoyment of religious worship and
belief without restraint, the reading of the Bible has been excluded
from many of the public schools under pretest that such practice
was in conflict with the regulations and beliefs of a religious denomi-
nation; and the public schools being furnished for all the children,
the reading of the Bible was excluded in order that there could be
no restraint upon their enjoyment of the public schools and with-
out prejudicing their religious beliefs. The teaching of religious
beliefs and principles to the youth of the State is recognized by
all as of high importance to the welfare of the citizen, but still
subordinate to freedom of conscience. The State may not join
religious instruction with secular education, but a church may;
and the parochial schools are furnished by the Roman Catholic

church in order that, along with secular education, the youth of the church may receive instructions in its religious beliefs and rules. In accord with its principles in that respect, the State will not interfere, but it may not assist in aid of any distinct religious tenet. From these general observations, we turn more directly to the issues.

In practice in the city of Ogdensburg the principal and a teacher of a parochial school have made requisitions for the number of books of each kind required for the school, for readers, arithmetics, spellers, geographies, English books and histories. These books have been procured by the board of education and delivered to the school; but the defendants say that books and supplies, while so procured and furnished, are furnished under the above section of the Education Law (§ 868, subd. 4) to the children attending the schools and not to the schools. Even though we accept the statute as meaning that the books and supplies are to be furnished to the pupils and not to the school, we think the act plainly comes within the prohibition of the Constitution; if not directly in aid of the parochial schools, it certainly is in indirect aid. The scholars do not use text-books and ordinary school supplies apart from their studies in the school. They want them for the sole purpose of their work there. There is no question but that the text-books and ordinary supplies are furnished direct to the public schools; there is no thought that they are furnished to the scholars as distinct from the schools; neither can there be such a thought in the case of the parochial schools.

It is claimed on the part of the defendants, and is found by the court, that the parochial schools of the city of Ogdensburg are recognized by law and by the Education Department of the State of New York as a part of the education system of the State. We think this is a mistaken view. The policy of this State is not only to furnish opportunities for education, but there are compulsory provisions of the Education Law, under article 23, entitled " Compulsory Education " (§§ 620–636, as amd. See, also, Laws of 1921, chap. 386, and Laws of 1917, chap. 563, amdg. § 620 et seq. as herein cited). Every child between seven and sixteen must attend school, except that in certain specified districts or outside of cities the minimum age is eight years, and except that, between fourteen and sixteen years of age, they need not attend if regularly and lawfully engaged in a useful occupation. The State has not required that every child shall attend the public schools, but it has required that either they attend the public schools, or if they attend elsewhere, they must be taught in the same subjects in English by a competent teacher, and since 1921 from texts written in English. It is the education of the youth that the State has required and

not this education necessarily in the public schools; but, if the education is to be had in a school other than the public schools, then it is necessary that those schools should be under the inspection of the State authorities. The State authorities have control of the education of the pupil and to require its attendance upon school. In no sense does the State assume to employ teachers of schools other than the public schools, but it insists that in all schools other than the public schools, where children of compulsory school age are attending, the teachers must have the required qualifications and there must be examinations to test the work done and there must be attendance officers to insure attendance. (§§ 623, 629, 632.) The only reference in the Education Law to the schools other than the public schools is in these provisions for compulsory education and in no wise are any schools other than the public schools recognized as a part of the education system of the State in the primary grades. This is in harmony with that expression in article 9, section 4 (*supra*), of the State Constitution forbidding State aid " other than for examination or inspection."

We may turn now to a specific examination of the provisions of this subdivision 4 of section 868. The reading of the section with the other provisions of the Education Law shows that all its requirements, including the " powers and duties " of boards of education, refer to those schools and institutions which are under the control of the board of education and which are public institutions. The first sentence of this subdivision refers to several activities necessary for the proper and efficient management of schools, which are under the management and control of the board of education; and the last sentence provides for furnishing text-books and other supplies " to all the children attending the schools of such cities in which free textbooks or other supplies are lawfully provided prior to the time this act goes into effect." The natural meaning of the wording of this section would apply to those schools only in such cities which are under the management and control of the board of education. There was no statute at the time containing general provisions for the furnishing of text-books or supplies to the children of schools of cities. The only law, other than the charter provisions, under which the children attending the schools in Ogdensburg were supplied with their text-books was chapter 187 of the Laws of 1903. This act applied to the city of Ogdensburg alone; it is not a general law. It provides (§ 1) that the electors of the city of Ogdensburg " are authorized to vote upon the question of furnishing at the expense of such city free text books and ordinary school supplies for the use of the pupils of the school district of said city

below the academic grade." It is to be observed that these things were not to be furnished to the pupils, but were to be furnished, apparently, to the schools, "for the use of the pupils of the school district." Section 2 provides: "the board of education of said city shall within ten days after such election submit to the common council an estimate of the amount of money, not exceeding two thousand dollars, necessary to defray the expense of providing and caring for free text books and supplies for the pupils of the school district of said city below academic grade, and the common council shall cause such sum to be levied and collected in the same manner as other moneys are now levied and collected in the school district of said city." The section then provides in like manner for an annual sum of not exceeding $1,500 for such purpose, and subdivision 9 of section 31 of the Ogdensburg City Charter (Laws of 1893, chap. 87, as added by Laws of 1915, chap. 525) authorizes and empowers the common council to raise annually by tax "for free text books, a sum not exceeding fifteen hundred dollars." Section 3 of the act of 1903 provides that the moneys so levied and collected shall be paid to the treasurer of the city to the credit of the board of education as a free text-book and supply fund, "to be used by such board in the purchase of text books and supplies for the use of the pupils of the several schools of the school district of said city, and for no other purpose." Section 4 provides: "All books and supplies furnished under the provisions of this act shall remain the property of the board of education." The expression "pupils of the school district of said city below the academic grade" naturally refers to the pupils of the public schools where these grades are recognized. The moneys are to be raised as other moneys for school purposes are to be raised. They are to be used in the purchase of text-books and supplies "for the use of the pupils of the several schools of the school district of said city, and for no other purpose." The several schools there referred to we think, considering all the provisions of the Education Law, are the public schools of the district under the control of the board of education. No other schools are "schools of the school district." There may be other schools in the district, but they are not the schools of the district; the parochial schools are schools of the parish, restricted to the parish; and there is nothing which implies that the books and supplies are to be furnished to the pupils as distinguished from the school. They are for the use of the pupils of the school district, to be furnished to the schools by the board of education and they are the property of the board of education. A school district is a district of and for the public schools; it was organized here as such and exists as such. The school is not the building and its equipment;

it is the organization, the union of all the elements in the organization to furnish education in some branch of learning — the arts or sciences or literature. It is the institution, and the teachers and scholars together, that make it up. The pupils are a part of the school.

Chapter 187 of the Laws of 1903 and chapter 786 of the Laws of 1917 are constitutional, but they do not bear the construction contended for by defendants. If the sections of these statutes complained of bore the construction contended for by defendants our opinion is that they would be unconstitutional.

We understand ordinary school supplies would mean pens, pencils, ink, paper, pads, slates — the ordinary things used by scholars in schools. These supplies are to be furnished in the same manner and to the same party as text-books. It seems to us to be giving a strained and unusual meaning to words if we hold that the books and the ordinary school supplies, when furnished for the use of pupils, is a furnishing to the pupils and not a furnishing in aid or maintenance of a school of learning. It seems very plain that such furnishing is at least indirectly in aid of the institution and that, if not in actual violation of the words, it is in violation of the true intent and meaning of the Constitution and in consequence equally unconstitutional. (*People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *Matter of Hopper* v. *Britt,* 203 id. 144.)

This disposes of the case, except as to the salary of the superintendent. We think, under chapter 525 of the Laws of 1915 (adding to Ogdensburg City Charter, § 31, subd. 8), and chapter 786 of the Laws of 1917 (adding to Education Law, § 877, subd. 1, ¶ a), and chapter 645 of the Laws of 1919 (adding to Education Law, § 882, being part of Education Law, art. 33-B, as thus added) that the board of education had the right to fix the salary of the superintendent of schools of the city, and that it was not limited to the sum of $1,500, which is provided as the amount that shall be in any event inserted in the tax budget for the salary.

The judgment dismissing the complaint, with costs, should be reversed and judgment should be directed in accord with the foregoing opinion in favor of the plaintiff restraining the defendants and all officers or agents acting in their behalf from purchasing or delivering text-books and ordinary school supplies for the use of pupils of schools in the city of Ogdensburg other than those public schools which are under the control and management of the board of education of the city of Ogdensburg.

We disapprove of findings of fact numbers VI, XIV, XV, and we find that the parochial schools of the city of Ogdensburg are not a part of the education system of the State; that those schools

are not " schools of the school district," but are " schools of the parish," and the pupils of those schools are not pupils of the school district within the meaning of chapter 187 of the Laws of 1903, or chapter 786 of the Laws of 1917; that those schools are not schools of the city of Ogdensburg in which free text-books or other school supplies were lawfully provided for prior to the time chapter 786 of the Laws of 1917 went into effect; that, under the Constitution of the State, text-books or school supplies cannot be furnished by defendants to the parochial schools or the pupils of parochial schools in the city of Ogdensburg.

All concur.

Judgment reversed on law and facts, with costs, and judgment is directed in accord with the opinion herein in favor of the plaintiff restraining the defendants and all officers or agents acting in their behalf from purchasing or delivering text-books and ordinary school supplies for the use of pupils of schools in the city of Ogdensburg other than those public schools which are under the control and management of the board of education of the city of Ogdensburg. The court disapproves of findings of fact numbers VI, XIV, XV, and finds that the parochial schools of the city of Ogdensburg are not a part of the education system of the State; that those schools are not " schools of the school district " but are " schools of the parish," and the pupils of those schools are not pupils of the school district within the meaning of chapter 187 of the Laws of 1903, or chapter 786 of the Laws of 1917; that those schools are not schools of the city of Ogdensburg in which free text-books or other school supplies were lawfully provided for prior to the time chapter 786 of the Laws of 1917 went into effect; that, under the Constitution of the State, text-books or school supplies cannot be furnished by defendants to the parochial schools or the pupils of parochial schools in the city of Ogdensburg.