*872 officers are valid and binding on each defendant bank respectively and that the individual defendants have no right, title, interest, power or authority in the premises either individually or in any capacity representative of the church. The resolutions referred to in said complaint disclose that Cameron Beadle, E. DeWitt Ramel and Alexander Ector Orr Munsel, respectively, churchwarden, clerk of the vestry and treasurer of the church, are designated as the officers authorized to draw the afore-mentioned funds. These designees are Melish partisans. Prior to April 4, 1956 the funds of the parish were under the jurisdiction and control of defendants Reynolds, Rutledge and Wright, as vestrymen of said church, under resolutions of the vestry adopted October 5, 1955 and filed with the banks in question.
On April 2, 1956 the annual parish meeting was held for the purpose of filling vacancies existing in the vestry which had occurred by expiration of term or otherwise, and was presided over by defendant Reynolds, who was then senior warden. The pro-Sidener faction contends that this meeting was so loud and boisterous and unruly that a motion was duly made and carried adjourning same for 30 days; and the opposition thereto, on the other hand, not only denies that the meeting was unruly and that it was duly adjourned, but also contends that the parishoners thereat proceeded with the business for which they met and duly filled existing vacancies by electing Cameron Beadle, as churchwarden, and Harvey Cox, Alex Munsel, Chelsea Watson, Frederick Cleeland and Frank Decorato, as vestrymen. The officers allegedly elected are pro-Melish and by their election control of the vestry passed to Melish supporters, and the board thus constituted adopted the resolutions of April 4, filed as above stated with the banks.
Following the meeting aforesaid, defendant Reynolds, having been advised by the chancellor of the diocese that the elections of April 2 were illegal and ineffective, and that the old vestry continued to function until their successors were legally chosen, communicated this advice to the defendant banks and requested that all accounts be frozen pending legal clarification; and on the basis thereof said banks refused to honor the resolutions referred to in the complaint.
The Chase Manhattan Bank in its answer claimed that it had conflicting resolutions and would honor neither, it being ignorant of the respective rights of the parties mentioned in both resolutions; and it later interpleaded as defendants Beadle, Ramel and Munsel mentioned in the resolution of April 4 and in its complaint with respect thereto demanded judgment that *873 the rights of said interpleaded defendants, as well as those of the defendants Wright, Rutledge and Reynolds, the vestrymen mentioned in the resolution of October 5, 1955, be determined and that it be authorized to pay into court the securities and cash or make such other disposition as is permitted by law and directed by the court. On January 23, 1957 said bank moved for an order pursuant to subdivision 7 of section 285 of the Civil Practice Act permitting it to pay into court the amount of the credit balance and the securities and cash held by it standing in the name of plaintiff church and said motion was granted, and on February 18, 1957 an order was signed by Mr. Justice Hart permitting the Chase Manhattan Bank to transfer the money and securities which are the subject of this action to a custody account in the name of plaintiff, to be retained to the credit of the action subject to further order of the court.
The individual defendants in their answer herein alleged that the vestry on April 4, 1956 was comprised of Dr. Sidener and the seven individual defendants and E. DeWitt Ramel, Philip Brook and John H. Burke and that said vestry at no time authorized the institution of the action, and otherwise denied generally the allegations of the complaint.
The argument on the appeal from the judgment directed by Official Referee MacCrate was heard in February, 1957; and inasmuch as said appeal remained undetermined and the instant action was scheduled to be tried in March, 1957 at Special Term, Part III, the individual defendants on March 4, 1957 moved before me in that part for an order staying all proceedings in said action pending the determination of the appeal from the judgment in the Sidener case, they claiming that a favorable determination of said appeal would invalidate the elections of April 2 and consequently render ineffectual the resolution of April 4. The pro-Melish vestrymen opposed this move on the ground that the Sidener appeal could have no possible effect upon the validity of the resolution of April 4 and moreover that an immediate trial would resolve whatever issues were raised in the action; and it was further urged by them that an adjournment of the trial would work a substantial hardship since the church had to resort to its deposits to pay outstanding bills and to carry on, and that Dr. John Howard Melish, who was paid a regular severance allowance under the Bishop’s judgment of 1949 had not been paid since September of 1956; and that defendant William Howard Melish, who had been adjudged to be the minister in charge of the church by reason of two determinations, likewise had not been paid since October
*876 pendency of the action. Relative to the payment of salary claimed by Sidener, they urge that he is not morally entitled to same since he was engaged during the waiting period as chaplain of the Cathedral School of St. Paul in Garden City and, moreover, that his claim, therefore, is premature in view of the pending appeal. They also contend that I have no power to grant this relief.
Stay of the trial of this action is granted on consent but all other relief sought by defendants is denied on the ground that I lack authority to grant same on this application.
The relief thus denied was sought primarily on the basis of the provision in my order of March 22, 1957 granting to any party leave to apply to me for any further relief in respect of the matters embraced in said order. On the original motion defendants sought a stay of the trial and no other relief. Being-empowered to grant the stay, I was likewise empowered to condition same on such terms as would ameliorate any condition resulting therefrom with respect to matters which could be considered neutral to both actions involving said church. Hence, I had the right to direct, as a condition of the stay, that operating expenses and other proper obligations be paid by checks drawn by two designees of one group or of the other. However, since the rights of the designees mentioned in the resolutions were being litigated, and not wanting to exercise my discretion in such a manner as would indicate recognition of the rights of one set and not of the other, I proposed, as above stated a course conciliatory to both sides namely that, if the parties consented thereto, such expenses could be paid by orders therefor signed by one designee from each group. Mr. Weissman, attorney for the Melish vestrymen, consented eventually to go along with this suggestion, but, as hereinbefore mentioned, entertained misgivings as to the- workability thereof, and, at his behest, and to secure compliance with the procedure indicated, I allowed said provision for granting leave for further relief. It was not intended thereby to retain continuing jurisdiction with respect to any phase of the case which might thereafter develop, but rather to reserve the power, in the event of noncompliance with said order, to circumscribe the operation of the stay or otherwise to condition same on different terms. In the light of the construction thus placed thereon, applicants have failed to present any facts empowering me to enlarge upon the order to the extent requested.
Assuming, arguendo, that said provision does encompass the instant application, I find, nevertheless, no showing of need for *877 granting the relief in question. No temporary relief should be granted in a manner determining issues in litigation or indicating an opinion thereon unless a necessity therefor is shown. Consistent with this principle, I refused, on the original motion, to permit any payments to be made to William Howard Melish, notwithstanding that Judge Baker and Judge MacCrate had already held that Sidener had not been duly elected rector, feeling that since Melish’s right thereto was being further litigated no hardship under the circumstances would result to him if required to await final and conclusive determination thereof. Sidener is placed in no better position than his adversary by reason of the reversal by the Appellate Division and the denial of a stay by the Court of Appeals. The denial of the stay does not necessarily portend what disposition will be made by that court. Were I to direct at this time that Sidener’s salary be paid, I would thereby indicate that his right thereto is not still open to question and would thus be overlooking the fact that, while four Justices of the Appellate Division voted to uphold Sidener, one Justice thereof dissented and held that Sidener had not been duly elected rector and also that two other jurists have made similar rulings. Such diversity of opinions indicate that a close question of law is involved and discretion dictates that I refrain from revealing my opinion thereon in view of the immediacy of the argument to be had before the Court of Appeals. Sidener has already waited 16 months for his salary and will surely sustain no hardship by being required to wait several more months.
It has been alleged, and not denied, that the impleaded defendant Munsel, presently acting as treasurer of the church, has for some time deposited church funds in a bank account opened in his name as treasurer, and has made payments therefrom to Melish for salary. Such a situation cannot be availed of to the advantage of Sidener, since same does not in any way operate to the prejudice of his rights. Munsel must assume full responsibility for his conduct and, in the event that Sidener’s claimed rights are finally established, must make personal reimbursement to the church for any payments made to Melish.
Although not necessary to consider on this application in view of the foregoing disposition, I do, nevertheless, wish to comment upon the tenuous claim advanced by the Melish group that it would be immoral for Sidener to seek his salary for the interim period since he was engaged as the chaplain for St. Paul’s School in Garden City during that time. If Sidener’s right to the rectorship is established, it is legal and entirely
*880 or sciences or literature. ’ (Smith v. Donahue, 202 App. Div. 656, 664.) ” (Matter of Flagg v. Murdock, 172 Misc. 1048, 1050.) In the Flagg case, the teaching of dancing in the basement of an apartment house was considered a school. In People v. Collins (191 Misc. 553, 554) the defendant was regarded as operating a school when she “ took into her home each morning from Monday through Friday up to fourteen children of preschool age, and kept them until approximately noontime. In her back yard she had a play yard, and in clear weather the children were allowed to play under supervision. In rainy or inclement weather, they were taken inside where a room equipped for that purpose was maintained.”
Webster’s New International Dictionary (2d ed.) defines a school as “A place for instruction in any branch or branches of knowledge; an establishment for imparting education ’ ’.
The fact that the petitioners received no payment from their students does not warrant a different label for their activity. While contending that they are not operating a school, the petitioners nevertheless urge that they may teach art under the ordinance. The ordinance does permit an artist or similar professional person to have an office or studio in his home, but it does not permit, even under a strained construction of the language used, the teaching activity involved here.
If we were concerned with an occasional gathering of persons interested in the subject of ceramics who merely discussed their problems or experiences it may very well be that any zoning-ordinance which prohibited such gatherings would be ruled invalid; but here we have a regular schedule of classes with many students in attendance.
A zoning ordinance which is concerned with maintaining the quiet, uncrowded, atmosphere expected in a residential district may not be held unreasonable because it requires the applicant for the conduct of such classes to satisfy the Board of Appeals that such use will not be detrimental to the neighborhood or to the residents thereof; or that the use will not create a hazard to health, safety, morals, or the general welfare.
Accordingly, the application is denied.
Settle order on notice.