Manuel W. Levine, J.
This is a proceeding in the nature of mandamus brought under section 7801 of the Civil Practice Law and Buies to obtain an order requiring the respondents, the Board of Education and the Superintendent of Schools of Union Free School District No. 12, Town of Hempstead, to provide home teaching for the infant, Kathleen Scales. The petitioner, a resident of Union Free School District No. 12, is the father of the infant. This proceeding was brought on by order to show cause and each respondent has interposed an answer to the petition.
The material facts of this controversy are not in dispute and it only remains for the court to pronounce its judgment on issues of law.
The undisputed facts are as follows:
Kathleen Scales is a student in the sixth grade of Our Lady of Lourdes School, Málveme, New York. Petitioner applied to the respondent board for home teaching for the infant, Kathleen Scales, alleging in his application that the infant was suffering from a rheumatic heart condition and would be confined to her bed (for 3 to 6 months). The respondent board denied petitioner’s application on the ground that the infant was attending a parochial school and stated that if the infant transferred to a public school in the district, home teaching would be provided. It is conceded by respondents that petitioner’s application and medical statement would be sufficient to entitle the infant to home teaching if she were enrolled in a public school.
Before dealing with the substantive legal issues posed by this proceeding it is necessary to dispose of certain procedural questions.
(1) Bespondents, in point III of their memorandum of law, assert that this court has no jurisdiction of this proceeding since section 310 of the Education Law gives the Commissioner of Education “ exclusive jurisdiction to hear appeals from acts of the Board of Education in matters of policy where the Board’s decision involves the exercise of discretion ’ ’. This contention has not been raised effectively since it is not set forth in the answer of either respondent and is dealt with only in respond *393 ents’ memorandum of law. However, the court notes in passing that section 310 is no obstacle to a proceeding like the instant one where relief in the nature of mandamus is sought to compel the performance of a duty specifically imposed by law (Matter of Engel v. Vitale, 18 Misc 2d 659, 663, and cases there cited).
(2) The petitioner, in his memorandum of law, argues that the school board cannot avoid its duty of providing the home teaching required under subdivision 24 of section 1709 of the Education Law by alleging the unconstitutionality of that statute. The board has not, in so many words, alleged the unconstitutionality of subdivision 24. Indeed in the “ denial ” portion of its answer it denies the petition’s, allegations that the statute in question obliges the board to provide the home teaching which the petitioner seeks. Moreover, in its memorandum of law respondent board refrains from asserting the unconstitutionality of the statute providing for home teaching and argues instead that the statute imposes a duty on school authorities only where the pupil in question is enrolled in a public school. However, in the single affirmative defense in its answer the respondent board, while not claiming that subdivision 24 is unconstitutional, alleges that section 4* of article XI of the New York Constitution prohibits the home teaching sought by petitioner herein and it thus follows that if the court agrees with petitioner that the statute requires the board to furnish home teaching to petitioner’s daughter the respondent board’s affirmative defense will compel the court to decide whether subdivision 24 is violative of section 4 of article XI. Indeed, unless the court finds a statutory duty to furnish home teaching here this affirmative defense is unnecessary since the board would not be authorized by law to provide the service petitioner seeks. It would therefore appear that the respondent board has raised an issue which may result in a challenge to the constitutionality of subdivision 24, indeed will result in such a challenge in view of this court’s decision hereinafter set forth. Thus the question urged upon the court by petitioner should be answered. May the Board of Education, an instrumentality of State government, ignore the mandate of a State statute on the ground that the statute violates a provision of the State Constitution? Or, to put it another way, does a civil division of the State, in defending against a mandamus proceeding based upon a State statute, have standing* to attack that statute as unconstitutional? While there is some divergence of authority on the point the more recent trend of decision in this State *394 pronounces an affirmative response (People ex rel. Buffalo & Fort Erie Public Bridge Auth. v. Davis, 277 N. Y. 292). Thus the respondent hoard has standing to assert a constitutional challenge and the court is called upon to consider the constitutionality of subdivision 24?, but as may be seen from the ensuing portion of this opinion, its decision on this point sustains the statute.
(■3) Respondent Howard T. Herber, Superintendent of Schools, in the single affirmative defense in his answer, alleges that he is not a proper party to this proceeding since he has no power to grant or refuse petitioner’s request and was merely acting as agent of respondent board in carrying out its order. However, on oral argument of this application respondent Berber’s attorney conceded that Herber was the official in charge of administering the school district’s home-teaching program and he is therefore a proper party to this suit.
Having disposed of questions of procedure let us now turn to a consideration of this case on its merits. It is the essence of petitioner’s position that subdivision 24 of section 1709 of the Education Law imposes upon the respondents a duty to provide home teaching for the petitioner’s daughter and that section 8 of article VII of the New York Constitution empowered the Legislature to enact subdivision 24. Section 8 of article VII, after laying down a general prohibition against the expenditure of public money for private purposes, then engrafted upon this prohibition a qualification in the following words:
‘ ‘ The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking, but the foregoing provisions shall not apply to any fund or property now held or which may hereafter be held by the state for educational purposes.
“ Subject to the limitations on indebtedness and taxation, nothing in this constitution contained shall prevent the legislature from providing for the aid, care and support of the needy directly or through subdivisions of the state; or for the protection by insurance or otherwise, against the hazards of unemployment, sickness and old age; or for the education and support of the blind, the deaf, the dumb, the physically hemdicapped and juvenile delinquents as it may deem proper; or for health and welfare services for all children ’ ’. (Emphasis supplied.)
*395 Subdivision 24 of section 1709 provides as follows:
“ The said board of education of every union free school district shall have power, and it shall be its duty: * * *
“ 24. To provide transportation, home-teaching or special classes, as defined under sections forty-four hundred three, forty-four hundred six and forty-four hundred seven of this chapter for physically or mentally handicapped and delinquent children. Such transportation, home-teaching or special classes, when provided pursuant to this subdivision, shall be granted to all such children irrespective of the school they legally attend. ’ ’ (Emphasis supplied.)
The language of subdivision 24 is all inclusive in its scope and so clear that recourse to such interpretive aids as legislative history is uncalled for. Subdivision 24 draws within the purview of its benefits all children “ irrespective of the school they legally attend ” and the court holds that this plain wording includes pupils of denominational schools within the favored class. If ever a legislative text may be said to have attained a condition of exactitude it is subdivision 24 and it is not for a court of law to adopt a tortured construction which sets at naught the objectively obvious intendment of a statutory expression. A decent respect for the principle of separation of powers lays upon the court the obligation to accord to a legislative enactment an enforcement which conforms to its clear objective meaning unless such enforcement is enjoined unmistakably by constitutional limitations. Certainly subdivision 24 does not transgress the permission embodied in section 8 of article VII. That constitutional provision, with no qualifications, authorizes the Legislature to provide for the education of the physically handicapped. Although a question might be raised as to whether petitioner’s child is “ physically handicapped ’ ’ within the meaning of section 8 of article VII, this issue has been foreclosed beyond the need of elaborate interpretive discussion by respondents’ admission that petitioner would be entitled to the relief that subdivisión 24 provides if only his daughter were enrolled in a public school. Therefore, unless some other constitutional restriction forbids the operation of subdivision 24 in conformity with its clear provisions this court must pronounce in favor of the petitioner. The only other constitutional impediment urged against petitioner is section 4 of article XI of the New York Constitution which reads as follows: “ Neither the state nor any subdivision thereof shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or *396 maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught, but the legislature may provide for the transportation of children to and from any school or institution of learning.”
Thus the sole remaining question is whether subdivision 24, interpreted as broadly as its language dictates, and as it is sought to be applied in this case is violative of section 4 of article XI (as changed in 1938 after the decision in Judd v. Board of Educ., 278 N. Y. 200, hereinafter referred to).
It would appear to be petitioner’s view, if the court does not mistake the implications of the arguments in his memorandum of law, that the portion of section 8 of article VII of the New York Constitution which declares that “nothing in this constitution contained shall prevent the legislature from providing for * * * the education * * # 0f * * * the physically handicapped ’ ’ relieves subdivision 24 from the restrictive effect of any constitutional limitation including the limitation on direct and indirect aid to denominational schools in section 4 of article XI. The court entertains serious reservations as to the soundness of this view. This provision in the second paragraph of section 8 as the court interprets its language seems to have been designed to legitimize public expenditures for education of the physically handicapped as against constitutional restrictions, like those in the first paragraph of section 8 of article VII forbidding the use of public money for private purposes. It does not seem by its language to have reference to a constitutional provision which, like section 4 of article XI, deals with prohibitions on aid to denominational schools and does not, on its face, prohibit public aid to the physically handicapped. The 1943 Opinions of the Attorney-General at page 119 seem to take a similar view of the relationship between section 8 of article VII and section 4 of article XI. Thus the court must reach the question of whether or not the application of subdivision 24 urged by the petitioner infringes section 4 of article XI and must determine whether home teaching of petitioner’s daughter is directly or indirectly in aid of or maintenance of the parochial school which she had been attending up to the time of her illness and which, according to petitioner’s counsel on oral argument, she will attend again when she is well. Patently the furnishing of home teaching to Kathleen Scales is not “ directly ” in aid or maintenance of her parochial school and the definition of direct aid enunciated in Judd v. Board of Educ. (278 N. Y. 200, supra) *397 corroborates this view. But does it constitute indirect aid to that school? The court thinks not. The benefits of home teaching will inure solely to the pupil, petitioner’s daughter, and it appears that these benefits may be physical as well as mental. It is difficult to conceive how the parochial school will obtain any real advantage from it. The fact that home teaching will enable petitioner’s daughter to retain her level of achievement and earn promotion to the next higher grade in the normal course would seem to be no financial aid to the parochial school.
Any benefits accruing to the parochial school, if indeed there be such, would seem too slight and remote to constitute indirect aid. The instant situation is to be contrasted with that in Judd v. Board of Educ. (278 N. Y. 200, supra) where free transportation to school was provided for parochial school pupils, and that in Smith v. Donahue (202 App. Div. 656) where free textbooks and school supplies were given to parochial school pupils. In the Smith case the books and supplies were held to have been furnished to the parochial school rather than to the pupils and in the Judd ease the transportation to school was viewed as helping to build up the school by insuring attendance. In both Smith and Judd the aid in question assisted the pupil in the very process of participating in the school activities at the time of that participation. Such a feature is absent from the instant case and if teaching at the pupil’s home is characterized as indirect aid to the parochial school then how does one characterize public health services presently available to denominational school pupils which have the effect of improving the pupil’s scholastic performance. Obviously a line must be drawn somewhere and the court has no hesitation in drawing it in a way which accords the fullest freedom of action to the State’s statutory program of child welfare. The question of whether or not home teaching is ‘ ‘ direct or indirect ’ ’ aid to a denominational school is a novel one. Consequently, in declaring its judgment the court has no infallible guide to enlighten it. In interpreting general phrases like “ indirectly in aid of ’ ’ judicial discretion is at large and there are no absolute criteria arising out of the interpretive process itself to settle the issue beyond all doubt. It is perhaps worth noting that if the home teaching here sought is not provided the petitioner’s daughter must do without educational training of any kind during the period of her incapacity since, as both counsel have agreed on oral argument, her parochial school has no home-teaching program. The court is also mindful that subdivision 24 of section 1709 is entitled to the presumption of *398 constitutionality with which all such legislation is favored and that a court of original instance must refrain from invalidating a legislative act on constitutional grounds unless its infirmities are unmistakable. If the petitioner had sought home teaching which employed parochial school books and teaching materials and which geared itself to the parochial school schedule or curricula a different question might be presented. But it would be going much further than this court is willing to go in this case to say to the sovereign State of New York that its interest as parens patries in the care and education of its children is not sufficiently weighty to justify the program of home teaching set Out in subdivision 24. Where a child is physically incapacitated for a long period of time must she suffer a lapse of mental growth simply because she is enrolled in a, denominational school and must the public educational institutions of this State confess their inability to deal with this serious human problem simply because home teaching might incidentally confer on the pupil additional knowledge which would enable her on her return to the denominational school to continue her educational process?
I hold that subdivision 24 of section 1709 of the Education Law as applied in this case is not unconstitutional as violative of Section 4 of article XI of the New York Constitution, and that subdivision 24 of section 1709 commands the respondents to furnish the home teaching prayed for in the petition herein. I therefore order the respondents Board of Education of Union Free School District No. 12, Town of Hempstead, and Howard T. Berber to provide home teaching for the infant Kathleen Scales commencing January 6, 1964.

 Renumbered section 3.