BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 1, TOWNS OF EAST GREENBUSH, NASSAU, SCHODACK, SAND LAKE AND NORTH GREENBUSH, RENSSELAER COUNTY, AND CHATHAM, COLUMBIA COUNTY, et al., Respondents, *v.* JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Appellant, and MICHAEL ROCK et al., Intervenors-Appellants.

Third Department, December 30, 1966.

70

*Louis J. Lefkowitz, Attorney-General* (*Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant.

*James J. MacKrell* (*Davis Polk Wardwell Sunderland & Kiendl, Porter R. Chandler* and *Richard E. Nolan* of counsel), for intervenors-appellants.

*Marvin E. Pollock* for respondents.

*Lester I. Goodman* for National Jewish Commission of Law & Public Affairs, *amicus curiæ.*

*Joseph B. Robison* for Metropolitan Council, American Jewish Congress, *amicus curiæ.*

*Reuben E. Gross* for Agudath Israel of America, *amicus curiæ.*

*Thomas J. Ford* for Catholic Lawyers Guild of the Diocese of Rockville Centre, *amicus curiæ.*

*Theodore D. Hoffman* for Atlantic District of the Lutheran Church-Missouri Synod, Eastern District of the Lutheran Church-Missouri Synod and another, *amici curiæ.*

HERLIHY, J. This is an appeal from an order and judgment which declared chapter 320 of the Laws of 1965 in violation of the Constitutions of the State of New York and of the United States.

Section 701 of the Education Law provides for the purchase of textbooks with public moneys for loan to students enrolled in grades 7 through 12 in public or private schools. The constitutional question involves the issue of using such funds for the purchase of books to be loaned to students in schools under the control or direction of a religious denomination.

The plaintiffs seek a declaratory judgment that the said law is unconstitutional insofar as providing for the purchase of textbooks with public funds for free loan to pupils attending reli-

gious schools and to restrain the Commissioner of Education from removing or attempting to remove any member of the plaintiff Board of Education for failure to comply with the said law and restraining the said Commissioner from apportioning to any school district any public moneys for the purpose of carrying out the law insofar as it may apply to pupils attending religious schools.

The Commissioner in his answer denies the various allegations and in addition raises the defense of lack of standing by the plaintiffs to bring the action and that there is no justiciable controversy.

We are satisfied that the statute does not contravene the Constitution of the United States or that of the State of New York but since we determine, as set forth hereinafter, that the plaintiffs have no standing or status to bring the present action, we do not base our decision upon the merits.

The defense of the lack of standing to raise the constitutional issue, set forth in the answer of the Commissioner, concerns the identical issue recently considered by this court in *City of Buffalo* v. *State Bd. of Equalization & Assessment* (26 A D 2d 213, 215) and we find no compelling argument on the present record to distinguish a school board from a municipality. There is a consistent line of appellate court decisions to the effect that a public body — in the present instance the Board of Education — has no standing to challenge a State statute restricting its governmental powers (*County of Albany* v. *Hooker*, 204 N. Y. 1, 9–10; *Black Riv. Regulating Dist.* v. *Adirondack League Club*, 307 N. Y. 475, 487, app. dsmd. 351 U. S. 922).

The basic principle involved is that the municipality or other agency is the creation of the State, subject to its direction and control. The extent, nature and purpose of such governmental powers are within the absolute discretion of the State and any alteration, impairment and destruction of these powers by the Legislature present no question of constitutionality. School boards, such as the plaintiffs herein, are the creation of the State, dependent upon the State for existence and performing their function subject to the control and direction of the State under the aegis of the Education Department through its Commissioner.

As we stated in *City of Buffalo* (*supra*, p. 215): " If consideration should be given to relaxing the rule * * * it is not a decision to be made by an intermediate appellate court."

As the concurring opinion notes, there are decisions where a Board of Education sues the Commissioner, but not under the

present circumstances, and the citations are not controlling. We would also note that an examination of the complaint does not substantiate the statement that the action can be interpreted to have been brought by the individual members of the respective boards. (See *St. Clair* v. *Yonkers Raceway,* 13 N Y 2d 72, 76.) As to procedural restrictions in reaching legal issues, see *Matter of Board of Educ.* v. *Nyquist* (23 A D 2d 592).

The judgment and order should be reversed, on the law, and the complaint dismissed.

STALEY, JR., J. (concurring). This is an appeal from an order and judgment of Special Term entered in Albany County August 30, 1966, which declared chapter 320 of the Laws of 1965 unconstitutional and in violation of both section 3 of article XI of the Constitution of the State of New York, and the First Amendment of the Constitution of the United States, insofar as it provides for the purchase of textbooks with public moneys for loan to students enrolled in grades 7 through 12 in schools under the control or direction of a religious denomination, and which enjoined the defendant-appellant from removing from office any member of the plaintiff school board who failed to comply with the provisions of such law, and which enjoined the defendant-appellant from apportioning to any school district any public moneys for the purchase of textbooks for free loan to such students.

The plaintiff-respondent seeks a declaratory judgment determining that the Education Law, as amended by chapter 320 of the Laws of 1965, insofar as it provides for loan of secular textbooks to students attending schools, wholly or in part, under the control of a religious denomination is unconstitutional, and also for an injunction against the Commissioner of Education from removing members of the plaintiff school board from office for refusing to comply with the statute, and from appropriating money to school districts for the purpose of purchasing textbooks for such students.

The defendant-appellant is the Commissioner of Education of the State of New York, and the intervenor-defendant appellants are parents of children residing in the school district attending Catholic parochial schools. Prior to the enactment of chapter 320, these parents purchased all of the textbooks used by their children, including textbooks of the type which they will be entitled to borrow pursuant to the said law. The appellants moved for dismissal of the complaint on the ground that it failed to state a cause of action, or for summary judgment declaring the statute constitutional, and the plaintiff cross-moved for judgment declaring the statute unconstitutional.

The constitutional and statutory provisions involved are the following:

First Amendment (in part) of the Constitution of the United States: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof".

Fourteenth Amendment (in part) of the United States Constitution: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * * nor deny to any person within its jurisdiction the equal protection of the laws."

Section 3 (in part) of article XI of the Constitution of the State of New York: "Neither the state nor any subdivision thereof shall use its property or credit or any public money, or otherwise authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught".

Subdivision 2 (in part) of section 701 of the Education Law (as amd. by L. 1965, ch. 320): "In the several cities and school districts of the state, boards of education, trustees or such body or officers as perform the function of such boards shall have the power and duty to purchase and to loan upon individual request, to all children residing in such district who are enrolled in grades seven to twelve of a public or private school which complies with the compulsory education law, textbooks. Textbooks loaned to children enrolled in grades seven to twelve of said private schools shall be textbooks which are designated for use in any public, elementary or secondary schools of the state or are approved by any boards of education, trustees or other school authorities."

The first question presented is whether or not the plaintiff school board of education has the legal capacity to institute an action for declaratory judgment involving the constitutionality of a State statute.

Subdivision 3 of section 701 of the Education Law, as amended by chapter 320, provides (in part): "boards of education * * * shall have the power and duty to purchase and to loan upon individual request, to all children residing in such district who are enrolled in * * * a public or private school which complies with the compulsory education law, textbooks."

Each member of the plaintiff school board took an oath of office obligating himself to support the Constitution of the United States and the Constitution of the State of New York. Any school board member willfully disobeying any rule or regu-

lation of the Commissioner, may be removed from office by the Commissioner after a hearing. (Education Law, §§ 306, 1706.) Furthermore, the Commissioner may withhold from any district public moneys for willfully disobeying any provision of law or any decision, order or regulation of the Commissioner. (Education Law, § 306.)

The Department of Education, on January 10, 1966 advised the District Superintendents of local school districts that, under the law: " all boards of education  *  *  *  have the power and it shall be their duty to purchase and to loan textbooks upon individual request to all children residing in the district enrolled in grades seven through twelve of a public or non-public school ".

The very nature of the relief sought indicates that it was the intent of the plaintiff to bring this action, not only in the capacity of a school board, but in their individual capacities as board members, to protect their civil right as elected officials to continue in office. Every citizen has capacity to sue, as differentiated from a right to relief, unless they are under some disability, and this right exists regardless of the title or status of the plaintiff. (*Field* v. *Allen*, 9 A D 2d 551.) By reason of the direct personal interests of the individual members of the board whose right to hold office may be directly affected, we are of the opinion that the plaintiffs could bring this lawsuit against this defendant.

The right of a local board of education to sue the State Commissioner of Education has frequently been upheld including actions involving the question of constitutionality of State statutes. (*Matter of Board of Educ. of Cent. School Dist. No. 2* v. *Allen*, 14 A D 2d 429; *Matter of Bethlehem Union Free School* v. *Wilson*, 303 N. Y. 107; *Matter of Board of Educ. of Union Free School Dist. No. 3* v. *Allen*, 6 A D 2d 316, affd. 6 N Y 2d 871.)

The appellants rely primarily on the cases of *Black Riv. Regulating Dist.* v. *Adirondack League Club* (307 N. Y. 475) and *City of Buffalo* v. *State Bd. of Equalization & Assessment* (26 A D 2d 213). In these cases, the issues involved a curtailment of the governmental powers of State agencies and, as such they were subject to the control or direction of the State, and the nature of their powers could be altered, impaired or destroyed by the State.

The *Black River* and *City of Buffalo* cases do not deal with the right of public officials to challenge the constitutionality of a statute requiring them to take affirmative nonministerial action which they regard as unconstitutional. The said cases, holding that a State agency cannot question the power of the State

Legislature to reduce its governmental powers, deal with a wholly different problem.

In the *City of Buffalo* case, this court held that the Mayor of the City of Buffalo had no standing in his official capacity to challenge a State statute relating to exemptions from local real estate tax assessments.

The court stated (p. 214) as follows: '' The present Mayor's duties remained substantially unaltered and in his brief the only allegation is that he has the duty to protect the interests of the residents of the City of Buffalo and that the action was brought as the result of a resolution passed by the Common Council of that city. There is no allegation in the complaint, or otherwise, that in his capacity of Mayor, or his rights thereunder, there has been any impairment or prejudice of the same.'' 

The plaintiff here alleges that the members of the school board may be prejudiced by removal proceedings if they fail to administer a State statute which is alleged to be unconstitutional.

The capacity of a school board to sue the Commissioner of Education, having been established by the courts in numerous decisions, such right should be available to challenge by an action for declaratory judgment a statute which may or may not compel the plaintiff to violate the Constitution.

The second question presented is whether or not the provisions of section 3 of article XI of the New York State Constitution are violated by the statutory provisions of chapter 320 of the Laws of 1965.

The statement of policy set forth in chapter 320 provides as follows: '' Section 1. Statement of policy. The security and welfare of the nation require the fullest development of the mental resources and skills of its youth. This calls for more adequate educational opportunities and increased efforts to educate more of the talent of our nation and requiring the correction of those imbalances in our educational programs which have led to an insufficient proportion of our population educated in the fields of science, mathematics, foreign languages and other non-sectarian subjects. The Congress of the United States has reaffirmed the principle that the states and local communities retain primary responsibility for public education. It is hereby declared to be the public policy of the state that the public welfare and safety require that the state and local communities give assistance to educational programs which are important to our national defense, and the general welfare of the state.'' (L. 1965, ch. 320, § 1.)

The fundamental importance of textbooks in the educational process is clear. President Johnson in his Education Program Message of January 12, 1965, noted: " The explosion of knowledge and the rapid revision of curriculums in the schools has created new demands for school textbooks. The obsolete text can suffocate the learning process. Yet the cost of purchasing textbooks at increasing prices puts a major obstacle in the path of education — an obstacle that can and must be eliminated." (111 Cong. Rec. 509.)

The prohibition contained in section 3 of article XI of the State Constitution relates to the use of public property or money " directly or indirectly, in aid or maintenance   *   *   *   of any school or institution of learning wholly or in part under the control or direction of any religious denomination ".

Chapter 320 provides for educational aids to the child, rather than through a subsidy to the school, by a loan of textbooks, the property of the school district, only to school children and only upon their individual request. The textbooks available for loan are those " designated for use in any public, elementary, or secondary schools of the state or are approved by any board of education, trustees, or other school authorities."

By the enactment of chapter 320, the State has recognized the education explosion of the 1960s, and that a uniformly high standard of education is a public responsibility.

The development of educational aid programs by both the Federal and State governments has resulted in benefits to students of public and nonpublic schools for the purpose of raising educational standards in New York State.

The New York State Scholar Incentive Program and the New York State Regents Scholarship Program (Education Law, §§ 601, 601-a) have provided large sums for students attending universities under religious auspices. Students in nonsecular schools receive benefits under the Federal school lunch program administered by the State (Education Law, § 3713) and from availability of health and welfare services through public schools (Education Law, § 912).

The basic purpose of chapter 320 is thus readily ascertainable as an aid to the school child rather than as an indirect aid to the school. The provisions of section 3 of article XI of the New York State Constitution prohibit the use of property or money directly or indirectly in aid of any religious school or institution. Chapter 320 provides that secular textbooks may be furnished to the school child and not to the school. The books are furnished only on request of the child. They receive the property of the State or of the school district and are

furnished on loan only. The availability of books to students at nonsecular schools is little different from the availability of books in a public library, which are loaned to individuals regardless of race, color or creed.

In the case of *Chance* v. *Mississippi State Textbook Rating & Purchasing Bd.* (190 Miss. 453), a similar textbook law was challenged as contravening the Mississippi constitutional prohibition of appropriated funds for the support of any sectarian school. The court held that the constitutional provision did not forbid acts calculated to serve the educational needs of the child rather than to aid the school and stated as follows (pp. 467–468): "The religion to which children of school age adhere is not subject to control by the state; but the children themselves are subject to its control. If the pupil may fulfil its duty to the state by attending a parochial school it is difficult to see why the state may not fulfil its duty to the pupil by encouraging it 'by all suitable means.' The state is under duty to ignore the child's creed, but not its need. It cannot control what one child may think, but it can and must do all it can to teach the child how to think. The state which allows the pupil to subscribe to any religious creed should not, because of his exercise of this right, proscribe him from benefits common to all."

We are of the opinion that the intent and purpose of chapter 320 was to provide additional educational aid to all school children attending the grades from 7 through 12, and that the statute did not aid directly or indirectly the school attended by said child. The statute, having been enacted in the furtherance of a sound public policy to provide "more adequate educational opportunities" for school children, in the absence of any clear, unambiguous langauge forbidding such specific educational aid, it must be held nonviolative of the State Constitution.

A statute similar to the one here in issue was held valid by the Supreme Court of the United States, in the case of *Cochran* v. *Board of Educ.* (281 U. S. 370). The *Cochran* case involved a Louisiana statute under which school books were to be supplied to all school children of the State. The Louisiana Supreme Court held that the statute did not violate the section of that State's Constitution prohibiting State aid to churches, sects or religious denominations. Chief Justice HUGHES, in his opinion, affirming the holding of the Louisiana Supreme Court, quoted a portion of that court's opinion as follows (pp. 374–375): "'The appropriations were made for the specific purpose of purchasing school books for the use of the school children of the state, free of cost to them. It was for their benefit and the resulting benefit to the state that the appropriations were made. True, these

children attend some school, public or private, the latter, sectarian or non-sectarian, and that the books are to be furnished them for their use, free of cost, whichever they attend. The schools, however, are not the beneficiaries of these appropriations. They obtain nothing from them, nor are they relieved of a single obligation, because of them. The school children of the state alone are beneficiaries.' "

The respondents and the court below rely mainly on the cases of *Smith* v. *Donohue* (202 App. Div. 656) and *Judd* v. *Board of Educ.* (278 N. Y. 200) to support their contention that chapter 320 violates the State Constitution. In both cases, it was held that the statutes involved violated the provisions of section 3 of article XI of the State Constitution, to the extent that they provided aid to children attending nonpublic schools.

The *Smith* case concerned a statute which provided for the supply of free textbooks to children in public schools. In addition, the statute provided that the textbooks were to be supplied to the schools directly instead of to students upon individual application by the student.

In the *Judd* case, a statute providing for public transportation of students to parochial schools, was declared to be unconstitutional by a 4 to 3 vote. Soon after the Court of Appeals' decision, a constitutional amendment which approved such bus transportation was adopted. (Art. XI, § 3, approved by the People, Nov. 8, 1938.)

The dissenting opinion in the *Judd* case stated as follows (pp. 220–221) : " The statute is not designed to aid or maintain the institutions themselves * * *. The statute in question does not have the effect of giving public money, property or credit in aid or maintenance of religious schools. The aid is given to the pupils who are legally attending such schools, to assist them to spend the required time in attendance upon instruction."

The development and acceptance of the " child-benefit principle " by the courts demonstrates that constitutional prohibitions against aid to parochial schools are properly interpreted to prevent programs designed to foster parochial education as such, but not to prevent programs designed to improve the secular education of all children even though some students. thus aided, may attend religiously affiliated schools.

The third question is whether or not chapter 320 violates the No Establishment Clause and the Free Exercise Clause of the First Amendment to the Constitution of the United States. The original purpose of the No Establishment Clause was to protect religious liberty, and to preclude any governmental preference

to any particular sect. The State statute here involved provides for loans of textbooks to children in order to benefit the general welfare by extending their nonsectarian knowledge essential to their future development as citizens with no sectarian purpose.

In the case of *Everson* v. *Board of Educ.* (330 U. S. 1), a New Jersey statute was upheld as constitutional, which provided for payments to parents of parochial school children in reimbursement for the cost of transporting their children to parochial schools. Similar to the *Cochran* case (*supra*), the pupil-benefit principle was applied. The court, holding that the establishment clause cannot be applied to deny the benefit of a public welfare program to individuals because of religion, stated as follows (p. 16): " New Jersey cannot consistently with the ' establishment of religion ' clause of the First Amendment contribute tax-raised funds to the support of an institution which teaches the tenets and faith of any church. On the other hand, other language of the amendment commands that New Jersey cannot hamper its citizens in the free exercise of their own religion. Consequently, it cannot exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, *because of their faith or lack of it,* from receiving the benefits of public welfare legislation."

In the case of the *Matter of Zorach* v. *Clauson* (303 N. Y. 161, affd. 343 U. S. 306), a State statute which provided for absence from public schools by students for religious observance and education was held constitutional.

The court stated (pp. 171–172) as follows: " The Supreme Court has recognized, in a religious freedom case, that to ' make accommodation between these freedoms ' guaranteed by the First Amendment and ' an exercise of state authority ' is always ' delicate ' (*Prince* v. *Massachusetts,* 321 U. S. 158, 165). Such freedoms are not absolute (*Prince* v. *Massachusetts, supra,* p. 166; *Dennis* v. *United States,* 341 U. S. 494; *Breard* v. *Alexandria,* 341 U. S. 622; *Schenck* v. *United States,* 249 U. S. 47). Numerous situations involving some incidental benefit to religion have been found constitutionally unexceptionable (see, e.g., *Everson* v. *Board of Educ.,* 330 U. S. 1; *Cochran* v. *Louisiana State Bd. of Educ.,* 281 U. S. 370; *Bradfield* v. *Roberts,* 175 U. S. 291). Tax exemption of church properties (Tax Law, § 4, subd. 6) is but another of many illustrations, and the practice is generally followed.  *  *  * It is thus clear beyond cavil that the Constitution does not demand that every friendly gesture between church and State shall be discountenanced."

See, also, *64th St. Residences* v. *City of New York* (4 N Y 2d 268); *Baer* v. *Kolmorgen* (14 Misc 2d 1015); *Matter of Scales* v. *Board of Educ.* (41 Misc 2d 391).

Chapter 320 does not involve affirmation by the State of religious beliefs or religious activities with the public schools. The statute is completely neutral with respect to religion, since it merely makes available secular textbooks to requesting students, regardless of the schools they attend. It completely meets the test for constitutionality under the First Amendment as stated by United States Supreme Court in *Abington School Dist.* v. *Schempp* (374 U. S. 203, 222): "The test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution * * * there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."

Chapter 320 of the Laws of 1965 does not violate either the provisions of the Federal or State Constitutions, and is constitutional in all respects.

The judgment and order should, therefore, be reversed, on the law, and the complaint dismissed.

GIBSON, P. J., and REYNOLDS, J., concur with HERLIHY, J.; STALEY, JR., J., concurs in result, in opinion, in which BRINK. J., concurs.

Judgment and order reversed, on the law, and complaint dismissed, without costs.