Robert C. Meade, J.
In this proceeding pursuant to article 78 of the CPLR, the petitioner seeks a judgment directing the respondent Board of Education to furnish to Michael Greve, a student of St. Thomas the Apostle parochial school, the same services it provides to certain students at its public schools.
Michael Greve, age six, a resident of Union Free School District No. 27 of Nassau County, is handicapped by severe deafness. Following several years of attendance at a nonpublic school for the deaf, Michael entered the kindergarten class of the respondent’s schools in September, 1971, remaining there until June of 1972. In September of 1972 the child transferred to his present parochial school, St. Thomas the Apostle, located within the boundaries of the respondent district. At the public schools provided by respondent there are available to those students with auditory handicap the services of an itinerant teacher who, it is asserted by respondent’s Superintendent of Schools and Assistant Superintendent of Schools, ‘ ‘ provides instruction in auditory training, speech reading, language and speech development and supportive education or tutorial assistance in curriculum areas indicated by the individual needs of each student. ’ ’ The services of the itinerant teacher are provided by an employment contract between the respondent and the Nassau County Board of Cooperative Educational Services (hereinafter BOCES). Before September of 1972 the parents of Michael were informed by respondent that only if the boy continued in the public schools would he be eligible for the services of the itinerant teacher in those areas described above. Following his transfer to the parochial school, application was made in Michael’s behalf by his parents and by the -principal of St. Thomas the Apostle seeking of respondent that training provided to those public school students with auditory handicap. The *793 denial by respondent of this application has resulted in the proceeding before this court.
There is no dispute between the parties that Michael suffers with a severe auditory handicap. Neither does respondent question that the transfer of the child from a school for the deaf only to one providing a normal child environment was recommended by representatives of the private school for the deaf that he had attended as well as by representatives of BOCES.
The respondent presents several considerations which will be treated in the order of their critical nature as assessed by this court.
Respondent urges that the matter be referred to the Commissioner of Education of the State of New York either as a matter of law pursuant to section 310 of the Education Law or in the exercise of discretion because of the knowledge and expertise of the Commissioner in his field. While this court in no way questions the knowledge or expertise of the Commissioner of Education, it nevertheless feels constrained to adopt the reasoning of both Mr. Justice Meyer of this court in Matter of Engel v. Vitale (18 Misc 2d 659), and Mr. Justice Levine in Matter of Scales v. Board of Educ. (41 Misc 2d 391), in both of which cases referral to the Commissioner was denied.
A second contention of the respondent is to require the presence in this action of BOCES as a party. It is noted that whatever services are provided by BOCES are pursuant to a written contract between it and the respondent, the cost of which is borne by the taxpayers of this respondent district. The question that is critical to a determination of this proceeding neither demands the presence of BOCES as a party nor will a solution be more surely found because of its presence.
The remaining position urged upon this court by respondent is most critical in nature and determinative in character. Respondent maintains that the services of the itinerant teachers it provides to those of its students with auditory handicap are purely instructional in nature and do not fall within the health and welfare services described in section 912 of the Education Law. That section reads in pertinent part as follows: ‘ The voters and/or the trustees or board of education of a school district, shall provide resident children who attend schools other than public with all or any of the health and welfare services and facilities, including but not limited to health, surgical, medical, dental and therapeutic care and treatment, and corrective aids and appliances, authorized by law and now granted or hereafter made available by such voters and/or trustees or board of educa *794 tion for or to children in the public schools in so far as these services and facilities may be requested by the authorities of the schools other than public.” The respondent lays great stress upon the use of the word ‘ ‘ therapeutic ’ ’ in said section 912, defines it as the curing and treating of disease and distinguishes such an endeavor from the sérvices of an itinerant teacher which the Assistant Superintendent of Schools of respondent describes as follows: ‘ ‘ The function of the itinerant teacher is to instruct the child despite his handicap, and thereby reduce the disadvantage of the child through learning techniques.”
Petitioner urges as a precedent binding upon this court Matter of Cornelia v. Board of Educ. (36 A D 2d 576, affd. 29 N Y 2d 586). There a course in speech therapy was the service provided by the public school to its own pupils and denied to a nonpublic school child. It was decided at Special Term and affirmed in both the Appellate Division and the Court of Appeals that although the course in speech therapy was described as part of the instructional program of the district, it was more than instruction, since it was specifically intended to correct defective speech of only those pupils having such a handicap. The similarities in fact in that case and this are striking since in both instances the services of itinerant teachers were made available only to those children with certain handicap and the training was designed to aid only those with the certain handicap, here an auditory one; the services, of necessity, are adjusted to individual needs in a significant degree; the services supplement regular instruction; the time devoted to these specialized courses approximates three hours a week; there is no showing that public school physical facilities are necessary to the services provided.
Respondent argues that a service must seek to correct an underlying medical defect if it is to be called therapeutic ” within the meaning of the statute. The services here involved have as their goal not the correction of the child’s hearing defect but rather mitigation of the effect which that defect will have upon the child’s life. Matter of Cornelia (supra) supports this view, respondent contends, because the service there involved sought to correct the underlying speech difficulty afflicting the child.
This court has concluded that respondent’s contention must be rejected because it is based upon too narrow a reading of the terms of the relevant statute. “ Therapeutic ” is not defined in the statute and the parties to this proceeding have not shown anything to indicate what precisely the Legislature meant by this term. The court is persuaded that it is too restrictive a view *795 to hold that the Legislature intended, by use of this term, to include within the embrace of the statute only those services which have as their goal the correction of an underlying medical defect. Services given to physically deprived children in an effort to mitigate the effects of the deprivation and to permit them to lead a life which resembles that led by a physically normal child may be covered by this term.
Even if the respondent be correct in his reading of the meaning of the term “ therapeutic,” the court is unable to accept its position. The statute here involved specifically states that there shall be provided “ the health and welfare services and facilities, including but not limited to health, surgical, medical, dental and therapeutic care and treatment.” (emphasis .supplied). If the services here involved cannot properly be characterized as therapeutic, they are not precluded because they are clearly ‘ health and welfare ’ ’ services. These services, offered only to a limited group of children suffering from certain physical defects, seek to develop the ability to lead the life of a normal and healthy child. Matter of Cornelia supports this view. That case did not establish the distinction urged by respondent between ‘ ‘ corrective ” and “noncorrective ” services, but rather held only that the speech therapy at issue there was a “ health and welfare ” service. If the services involved here are not therapeutic, they are nonetheless health and welfare services within the meaning of section 912. Accordingly, respondent must provide to the petitioner Michael G-reve that same training to the same extent and in the same manner that its itinerant teachers now or may hereafter provide for students in its own schools.