In the Matter of MICHAEL GREVE, an Infant, by His Father and Natural Guardian, HENRY GREVE, Respondent, v. BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 27, Appellant.— In a proceeding under article 78 of the CPLR, the appeal is from a judgment of the Supreme Court, Nassau County, entered January 17, 1973, which directed appellant

board of education to provide, pursuant to section 912 of the Education Law, an itinerant teacher for the petitioner child at the St. Thomas the Apostle School in the same manner and to the same extent appellant provides in its own schools to students with an auditory handicap. Judgment affirmed, with $20 costs and disbursements. We agree with Mr. Justice Shapiro that if the special teacher, whose salary is paid by appellant out of tax-raised moneys, is used by the parochial school to teach religion to the child here in question, whose hearing is so impaired that he requires special training to minimize his deafness, it would be in violation of the First Amendment of the Constitution of the United States (*Lemon* v. *Kurtzman*, 403 U. S. 602) and section 912 of the Education Law. However, we do not agree that the special educational assistance necessary to aid the child in overcoming his auditory handicap must therefore be withheld. Neither the public school authorities, the parochial school authorities, nor anyone having to do with supplying this aid would, in our view, use the special "hearing aid" teacher to teach religion and thereby violate the spirit of this determination, the Constitution of the United States and the cases which interpret it and the statute law of this State. Since use of the teacher for that purpose could seriously endanger the continuation of this valuable service, no one could or should be reasonably expected to violate this caveat. If religious instruction is to be given to this child with an auditory handicap, it will have to be done without the aid of the special teacher. Hopkins, Acting P. J., Christ and Brennan, JJ., concur; Shapiro, J., dissents and votes to reverse and to dismiss the proceeding, with the following memorandum: In this case we are faced with the heartrending problem of having to determine whether a physically handicapped child (in this case a child suffering severe loss of hearing) is to be denied access to a helpful educational service to which he would clearly be entitled if he were enrolled in a public school. The judgment appealed from directs the appellant board of education "to provide at its own cost and expense an itinerant teacher for Michael Greve to provide Michael Greve with the same services on the same basis, in the same manner and to the same extent as it now provides for students in its own schools with an auditory handicap and that said services be provided to Michael Greve at St. Thomas the Apostle School." It is with regret that I have concluded that the applicable provisions of our State and Federal Constitutions[1] bar the board from so doing. The duties of the itinerant teacher whose services Special Term has directed the board of education to provide to the petitioner's child are described by the appellant's Assistant Superintendent of Schools as the giving of "instruction in auditory training, speech reading, language and speech development and supportive education or tutorial assistance in curriculum

---

1. Section 3 of article I of the State Constitution provides in part: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind". Section 3 of article XI of the State Constitution provides: "Neither the state nor any subdivision thereof shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or discretion of any religious denomination, or in which any denominational tenet or doctrine is taught, but the legislature may provide for the transportation of children to and from any school or institution of learning." The First Amendment to the Constitution of the United States provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof".

areas indicated by the individual needs of each student."[2] The same authoritative source states that this "special instruction is offered to students who attend their regular classes and receive special instruction at their regular school two or three times each week for a period of forty-five minutes to an hour" and that "*the itinerant teacher confers with the regular teacher among others, in planning his work*" and "*provides supportive instruction in the regular curriculum*" with the proper use of auditory equipment" and "provides instruction in lip reading and speech communication skills" (emphasis supplied). The Assistant Superintendent also states in his affidavit, "The children who receive this special instruction *take their regular class textbooks* with them from their classroom to the itinerant teacher," whose function is "to instruct the child despite his handicap, and thereby reduce the disadvantage of the child through learning techniques" (emphasis supplied). We are faced here with the problem of drawing the line between services which the State or its subdivisions may provide to all such children, such as health and welfare services and facilities, which include "health, surgical, medical, dental and therapeutic care and treatment, and corrective aids and appliances" (Education Law, § 912)[3], vis-à-vis educational services such as those described by the Assistant Superintendent, which include such matters as "tutorial assistance in curriculum areas," involve conferring "*with the regular teacher* among others" of the physically handicapped child and provide him with "*supportive instruction in the regular curriculum*" (emphasis supplied). In dealing with the validity of the use of public funds to assist children enrolled in parochial schools by providing them with free secular textbooks, a service provided to children attending public schools, the Supreme Court of the United States in *Lemon* v. *Kurtzman* (403 U. S. 602, 612–613) formulated a threefold test of constitutionality for such aid under the establishment-of-religion aspect of the First Amendment: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education* v. *Allen*, 392 U. S. 236, 243 (1968); finally, the statute must not foster 'an excessive governmental entanglement with religion.' *Walz* [v. *Tax Comm.*, 397 U. S. 664]." This test was reaffirmed and restated in Committee for Public Educ. v. Nyquist (413 U. S. 756, 772–773) in the following words: "The now well-defined three-part test that has emerged from our decisions is a product of considerations derived from the full sweep of the Establishment Clause cases. Taken together, these decisions dictate that to pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, e. g., *Epperson* v. *Arkansas*, 393 U. S. 97 (1968), second, must have a primary effect that neither

2. The Assistant Superintendent's statements describing the services provided by the board's itinerant teachers are not challenged in the affidavits submitted in support of the petition.

3. Section 912 appears in article 19 of the Education Law, which is entitled "Medical and Health Service". The sections of this article are entitled: "§ 901. Medical inspection to be provided"; "§ 902. Employment of medical inspectors"; "§ 903. Pupils to furnish health certificates"; "§ 904. Examinations by medical inspection"; "§ 905. Record of examinations; eye and ear tests"; § 906. Existence of contagious diseases; return after illness"; "§ 907. State and medical inspection of schools"; "§ 908. State specialist for eyes and ears; state audiometer technician": "§ 909. School hygiene districts"; "§ 910. Choice of method of treatment"; "§ 911. Enforcement"; § 912. Health and welfare services to all children"; "§ 912-a. Urine analysis; drug detection"; "§ 913. Medical examinations of teachers and other employees".

advances nor inhibits religion, *e. g., McGowan* v. *Maryland, supra*; *School District of Abington Township* v. *Schempp*, 374 U. S. 203 (1963), and, third, must avoid excessive government entanglement with religion, *e. g., Walz* v. *Tax Comm'n, supra*." If the services of the itinerant teacher were limited to the following portions of the Assistant Superintendent's description: "instruction in auditory training, speech reading, language and speech development" and "lip reading and speech communication skills," services clearly involving only improvement of the health and physical well-being of children to help them overcome the adverse effects of their physical handicap, the providing of such services by the State through the instrumentalities of its agency, the board of education, would reflect only a clearly secular purpose, would have a primary effect that neither advances nor inhibits religion and would in no way create any danger of excessive governmental entanglement with religion. It is the fact that the board of education, in defining the function to be carried out by its itinerant teachers for pupils enrolled in its schools, has included "supportive education or tutorial assistance in curriculum areas indicated by the individual needs of each student," coupled with a directive that those teachers in carrying out that aspect of their duties shall require the children to take their regular class textbooks with them and that they (the itinerant teachers) confer with each child's regular teacher in planning the pupil's work, that raises questions as to the program's compliance with the three tests. Such regular educational activity would involve, in the case where the child receiving the services of the itinerant teacher is enrolled in a parochial school, a purpose not clearly secular, an effect which might advance or inhibit religion and conduct which would result in governmental entanglement with religion.[4] The itinerant teacher, in working with the handicapped children to give them such supportive education, is required to confer with the children's parochial school teachers whose teaching goals include "inculcating religious doctrine" (n. 4) in the children. Giving the children such supportive instruction in their regular parochial school curriculum would necessarily reflect the role of such schools, "a powerful vehicle for transmitting the Catholic faith to the next generation" (n. 4). These are clearly proper and desirable activities, but they cannot fairly be characterized as secular in purpose, as neither advancing nor inhibiting religion, nor as avoiding governmental entanglement with religion. The petitioning parent bases this proceeding on the provisions of section 912 of the Education Law, the applicable portion of which provides: "The voters and/or the trustees or board of education of a school district, shall provide resident children who attend schools other than public with all or any of the health and welfare services and facilities, including but not limited to health, surgical, medical, dental and therapeutic care and treatment, and corrective aids and appliances, authorized by law and now granted or hereafter made available by such voters and/or trustees or board of education for or to children in the

---

4. In *Lemon* v. *Kurtzman* (403 U. S. 602, 616), Chief Justice Burger discussed the role of religion in parochial schools, saying: "On the basis of these findings the District Court concluded that the parochial schools constituted 'an integral part of the religious mission of the Catholic Church.' The various characteristics of the schools make them 'a powerful vehicle for transmitting the Catholic faith to the next generation.' This process of inculcating religious doctrine is, of course, enhanced by the impressionable age of the pupils, in primary schools particularly. In short, parochial schools involve substantial religious activity and purpose. The substantial religious character of these church-related schools gives rise to entangling church-state relationships of the kind the Religion Clauses sought to avoid."

public schools insofar as these servi~es and facilities may be requested by the authorities of the schools other than public." The question then is whether the provisions of this section which authorize the furnishing of the services of itinerant teachers to the petitioner's child even though he attends parochial school, though at the request of "the authorities of the schools other than public" rather than at the request of the child's parent, as here, qualify as "health and welfare services and facilities." Special Term held that they did because it interpreted the service given by the itinerant teachers to physically handicapped children as including those which "seek to develop the ability to lead the life of a normal and healthy child", something which clearly contributes to the welfare of the child. But such a view destroys the constitutional distinction recognized by the Supreme Court of the United States in *Lemon* v. *Kurtzman* (403 U. S. 602, *supra*) between protecting the health and welfare of children and providing instructional services (see, also, *Everson* v. *Board of Educ.*, 330 U. S. 1). That distinction may not be ignored or obliterated if the constitutionality of section 912 is to be preserved. It is emphasized by the decision in *Matter of Cornelia* v. *Board of Educ., Cent. School Dist. No. 1* (36 A D 2d 576, affd. 29 N Y 2d 586), where the court upheld the right of a child enrolled in a parochial school to the benefits of a speech correction program offered by a public board of education as a health and welfare service, emphasizing however, that such service might properly be given to the child only to the extent that it was made available to children in the public schools. In *Cornelia* there is no indication that the speech correction there offered by the board of education in any way involved the board's employees in giving to the handicapped children receiving the speech correction services any supportive instruction in the parochial school curriculum, or that such employees used parochial school texts[5] or engaged in any other form of parochial school instructional activity when rendering such services. I reach the conclusion that the judgment under review must be reversed with extreme reluctance. I feel compelled to do so by the applicable constitutional provisions. The result would be different if the appellant board of education were to use its itinerant teachers *solely* for activities which seek to remedy the physical defects of the children they are assigned to help and eschew any effort to use them for supportive education and tutorial assistance in curriculum areas indicated by the individual needs of each student, efforts which involve them in use of the children's regular class textbooks and conferences with the children's regular teachers. [72 Misc 2d 791.]

---

5. It might be argued that, since textbooks are provided by the State to children attending parochial schools, there is no reason to believe that those textbooks are sectarian in content or impact. But there is no evidence in the record that the textbooks provided by the State are the only textbooks used in those schools; nor does the fact that they are State-provided insure against their use in a manner which involves sectarian indoctrination.