OPINION OF THE COURT
Parker J. Stone, J.
Defendants have moved to dismiss the complaint and for summary judgment on behalf of defendants on the grounds that the complaint fails to state a cause of action. The plaintiff has cross-moved for summary judgment.
Section 99-c of the State Finance Law (L1977, ch 55, § 1) became effective on April 1, 1977. This statute empowers the Comptroller to establish a fund called the Health Insurance Reserve Receipts Fund (HIRRF) to receive transfers of funds from the health insurance carriers of the New York State employees’ health insurance program (health program) and to disburse the funds received to participating municipalities and school districts. The funds intended to be transferred by the insurance carriers to HIRRF are from the reserves established by the insurance carriers to protect *38 their liability for incurred but unreported and unpaid claims. The statute further provides that in the event a municipality or a school district elects to receive a distribution from HIRRF pursuant to an agreement between the municipality or school district and the State, and thereafter elects to terminate its contractual agreement for health insurance with the New York State Department of Civil Service (Department) and defaults in its obligation to repay the distribution received, the Comptroller may withhold from local assistance aid, educational aid and other State aid as appropriate, such amount as is required to reimburse HIRRF for the distribution received. Section 99-c of the State Finance Law also provides that in the event money is withheld for repayment of the distribution made to the municipality or school district, the State shall not be obligated to pay any additional or increased apportionment of State aid or assistance. The Governor’s memorandum, in respect to section 99-c (NY Legis Ann, 1977, p 78), states that $100,000,000 was included in the 1977-1978 executive budget to guarantee to the insurance carriers the return of distributions made from HIRRF.
On April 12, 1977, the Legislature passed chapter 71 of the Laws of 1977, effective July 1, 1977. Subdivision b of section 8 thereof, reads as follows: “Notwithstanding the provisions of subdivision one of section thirty-six hundred nine of the education law, the commissioner of education shall reduce the apportionments to each school district in the school year commencing July first, nineteen hundred seventy-seven during the fall of such year in accordance with a schedule adopted by the commissioner of education, with the approval of the director of the budget, in an amount not to exceed the amounts received by each such school district as a distribution from the health insurance reserve receipts fund pursuant to a chapter of the laws of nineteen hundred seventy-seven. If a school district eligible as of March twenty-fifth, nineteen hundred seventy-seven to receive distributions from the health insurance reserve receipts fund elects not to receive distributions at the time such distributions are made, or if a school district files with the department of civil service after March twenty-fifth, nineteen hundred seventy-seven a notice of intent to leave *39 the New York State government employee health insurance plan, the commissioner of education shall deduct from such apportionments to such school district the amount which such district would have been eligible to receive. If, however, a school district has filed with the department of civil service by March twenty-fifth, nineteen hundred seventy-seven a notice to leave such health insurance plan and does leave such plan by June second, nineteen hundred seventy-seven, then such district shall not be entitled to —Distributions from the health insurance reserve receipts fund nor shall the commissioner of education deduct from state aid apportionments to such school district an amount equal to that which the district would have received had it remained in such plan.”
On August 8, 1977, the plaintiff entered into an agreement with the Department pursuant to section 99-c of the State Finance Law. This agreement entitled plaintiff to receive $407,095 from HIRRF. It also provided that in the event the agreement between the Department and plaintiff was terminated, plaintiff would transmit to the Department the amount due within 30 days of receipt of notice calling for its return. The agreement also provided that the amount due could be withheld by the Comptroller from any future payment of local assistance aid, education aid, or other State aid.
On or about September 13, 1977, plaintiff received from the Department, a payment which included the sum of $407,095 from HIRRF. On November 21,1977, the general State aid payment received by plaintiff was reduced correspondingly by $407,095.
Sometime in 1979, the plaintiff notified the Department that it intended to withdraw from the health program, effective January 1, 1980. Such withdrawal was effected and the agreement of August 8, 1977 was terminated between plaintiff and the Department. In December, 1979, the Department, through the New York State Department of Audit and Control, directed the State Education Department to deduct $407,095 from plaintiffs State aid. Plaintiff thereafter commenced this action for a judgment declaring the August 8,1977 agreement void and unenforceable, that *40 section 99-c of the State Finance Law and chapter 71 (§ 8, subd b) of the Laws of 1977 be declared unconstitutional, or in the alternative, that if the defendants are bound to reimburse HIRRF, plaintiff be reimbursed a like amount by the defendants. Plaintiff has not returned the $407,095 and defendants have been temporarily enjoined from withholding this amount from plaintiff’s State aid.
A determination of the respective rights and obligations of the parties is governed by the construction and constitutional validity of the statutes in question. In respect to the agreement of August 8, 1977, suffice it to say that its construction and validity are circumscribed by section 99-c of the State Finance Law upon which the agreement is based. A consideration of contractual law in respect to this agreement is therefore deemed unnecessary.
It is apparent from a reading of section 99-c of the State Finance Law, and the Governor’s memorandum relating thereto, that the legislative intent is to provide a source of funds for municipalities and school districts in the form of a loan. Local assistance aid is to be affected only upon a default in repayment of the loan and only to the extent of the default. Upon a withholding of local assistance, the statute provides that the State is not obligated to increase State aid. Section 99-c does not in any way suggest that a school district participating in HIRRF funding should realize less local assistance aid by the repayment of HIRRF distribution than it would have realized if it were not a participant in the plan. Likewise, the statute does not suggest that the State should reap a profit upon default. The Governor’s memorandum refers to an appropriation of $100,000,000 to repay insurance carriers upon default and that the State recoup its payment by a withholding of local assistance. The position urged by the defendants does, in fact, result in the plaintiff losing $407,095 in the State assistance aid and the State profiting by that amount.
Turning to an examination of chapter 71 (§ 8, subd b), of the Laws of1977 as it affects the plaintiff, it is apparent that the intent of the Legislature was to reduce school district apportionment in the fall of the school year in an amount not to exceed the amount of distribution received by the *41 school district from HIRRF. This statute is in direct conflict with section 99-c of the State Finance Law which delays repayment until the school district elects to withdraw from the health program. An application of both section 99-c of the State Finance Law and chapter 71 (§ 8, subd b) of the Laws of 1977 to a distribution under HIRRF, results in a reduction of educational aid up to twice as much as the participating school district initially received as a distribution.
Although the Legislature has the power to reduce State aid, it may not do so on a selective basis and thereby discriminate against those school districts which happen to be participants in the health program subsequent to March 25, 1977. There is no rational basis for discriminating between school districts which were participating in the health program as of March 25,1977 and the school districts which were not participating in the health program as of that date. This suggests constitutional invalidity. (Matter of Levy, 38 NY2d 653; Alevy v Downstate Med. Center of State of N. Y., 39 NY2d 326.)
Nevertheless, statutes must be construed to preserve their constitutionality, if at all possible (Matter of Seitz v Drogheo, 21 NY2d 181), and unreasonable and unjust results must be avoided in the construction of legislative enactments. (Johanns v Ficke, 224 NY 513; Matter of Meyer, 209 NY 386.) Consequently, “[u]nder familiar principles of statutory construction, the conflict between these provisions must be resolved by holding that the latter section impliedly repealed the former insofar as they are inconsistant, with the result that the latter is controlling.” (Abate v Mundt, 25 NY2d 309, 318.) Chapter 71 (§ 8, subd b) of the Laws of 1977, which was passed subsequent to section 99-c of the State Finance Law, is therefore construed as repealing the inconsistent provisions of section 99-c which provide for repayment upon termination of participation in the health program.
The court therefore declares that those portions of subdivisions 1 and 2 of section 99-c of the State Finance Law as are inconsistent with subdivision b of section 8 of chapter 71 of the Laws of 1977 have been repealed. The court also *42 declares that the agreement of August 7, 1977 is unenforceable since the statutory authority for the repayment called for by the agreement was repealed prior to its execution.
Finally, the court declares that the plaintiff has no obligation to reimburse the HIRRF or the defendants for the payment received by the plaintiff in 1977 in the sum of $407,095.
The motion for summary judgment by the defendants is denied. The cross motion for summary judgment by the plaintiff is granted as herein set forth.