OPINION OF THE COURT
Joseph J asp an, J.
The plaintiff and plaintiff-intervenors in this action move, pursuant to CPLR 3212, for an order granting them summary judgment upon the grounds that (a) chapter 55 and chapter 71 (§8, subd b) of the Laws of 1977 are unconstitutional; (b) that the Department of Civil Service acted in an arbitrary and capricious manner and in excess of its authority in its demand that movants execute an agreement based on chapter 55 of the Laws of 1977, and (c) that in any event chapter 71 (§8, subd b) repealed inconsistent provisions of chapter 55.
*581 The dispute arises out of the legislative intent to provide some of the State aid for education for the year 1977-1978 from sources other than tax revenue.
As of April 1,1977 article 11 of the Civil Service Law set forth the regulations and mechanics of a health insurance plan for State employees and retired State employees. Specifically subdivision 6 of section 167 of the Civil Service Law created a “health insurance fund” and provided that amounts withheld from those employees, amounts contributed by the State and amounts contributed by any participating employer shall be credited to the fund. In addition, “[t]he income derived from any dividends, premium rate adjustments or other refunds under any such contract or contracts shall be credited to such fund and retained therein as a special reserve for adverse fluctuation in future charges under any such contract or contracts.” (Civil Service Law, § 167, subd 6.)
The president of the State Civil Service Commission was further empowered to purchase health insurance contracts from one or more corporations licensed to transact accident and health insurance business in the State (Civil Service Law, § 162) and to pay the required premiums and amounts required to be paid to any contracting corporation from the health insurance fund (Civil Service Law, § 162).
On April 12,1977 the Legislature enacted section 99-c of the State Finance Law (L 1977, ch 55, eff retroactively to April 1, 1977) entitled “Withholding of state aid upon failure of municipalities and school districts to repay health insurance reserve receipts when required.” That section empowered the Comptroller to establish a health insurance reserve receipts fund (HIRRF) “to receive transfers of funds from the health insurance carriers of the New York state employee health insurance plan, pursuant to contractual agreements between such carriers and the New York state department of civil service and/or from the health insurance fund” (State Finance Law, § 99-c, subd 3); and to distribute the moneys retained in the fund to municipalities and school districts who retain a contractual agreement for health insurance with the Civil Service Department (State Finance Law, § 99-c, subd 1).
*582 It also provided that once a school district has elected to receive such funds, it undertook to repay the amounts so advanced if (a) it terminates its contract for State provided health insurance and/or (b) “if called upon by the New York state department of civil service, pursuant to such agreement, to return such distribution within the time period and under the conditions specified in such agreement” (State Finance Law, § 99-c, subd 1).
If the school district defaults in its obligation to repay, the Department of Civil Service through the Comptroller is empowered to withhold from the next succeeding installments of State aid the amounts required to pay the default (State Finance Law, § 99-c, subd 2).
In other words, a school district which elected to draw against the HIRRF and is then in default of repayment as a result of a withdrawal from the health plan or upon request of the Civil Service Department will have its State aid withheld to the extent necessary to cure its default.
On April 12,1977, the same day on which chapter 55 was enacted, the Legislature also enacted chapter 71 of the Laws of 1977 (eff July 1, 1977) which provided for a comprehensive overhaul in the manner in which school districts were to be funded.
The three significant provisions are found in subdivision b of section 3, and subdivisions a and b of section 8 of chapter 71.
Subdivision b of section 3 provides that a school district will not receive less total aid due and payable for the school year commencing July 1, 1976 (the “save-harmless clause”).
Subdivision a of section 8 provides that the Commissioner of Education shall reduce a school district’s apportionment by the amount received from the education fund created by the New York State Lottery.
Subdivision b of section 8 (quoted infra) provides that State aid shall be further reduced by the amount a school district receives as a disbursement from the HIRRF if (a) the school district elects to receive HIRRF funds, or (b) the school district elects after March 25, 1977 not to receive *583 distributions from HIRRF fund or if the school district elects to leave the New York State health insurance plan.
However, school districts who were not members of the State health insurance plan as of March 25, 1977 or who elected to withdraw from the plan on or before March 25, 1977 and which did withdraw by June 2, 1977 would not have their State aid reduced by the amount they could have obtained from the HIRRF.
The plaintiff and plaintiff-intervenors claim that the impact of the afore-mentioned laws is to force a school district to remain in the State health insurance plan or be faced with a “two-fold” decrease in their State aid occasioned by a reduction in aid equal to the HIRRF funds and by the State withholding moneys to repay the amount of the school district’s default. The movants further contend that by reason of the save-harmless clause and the preferred treatment given to school districts who left the State plan on or before March 25, 1977 they have been discriminated against in violation of the equal protection clause of the Constitution; that the statutes (State Finance Law, § 99-c; L 1977, ch 71) are unconstitutionally vague and that chapter 71 (§8, subd b) has impliedly repealed the inconsistent provisions of section 99-c.
The plaintiff Board of Education of Deer Park Union Free School District commenced the instant action in August, 1977 setting forth seven causes of action in which it sought a declaratory judgment that would in effect permit it to withdraw from the New York State health insurance plan without a consequent loss of State aid. The amount involved is $99,740.
A motion by plaintiff for a preliminary injunction was denied on January 11, 1978. In the same opinion the first, fourth and sixth causes of action of an amended complaint were dismissed.
The second and third causes of action challenged the contract submitted by the Department of Civil Service; the fifth cause of action alleged that chapter 55 of the Laws of 1977 was unconstitutionally vague; and the seventh cause of action alleges that both chapters 55 and 71 are unconstitutional in that they violate equal protection clauses of the State and Federal Constitutions.
*584 The plaintiff has not yet terminated its contract with the New York State health insurance program and therefor suffered no loss of State aid.
In October, 1980 13 additional school districts in upstate communities were granted leave to intervene in the action. This complaint sought relief similar to that of the original plaintiff except that they also sought recovery of sums deducted from their State aid as a result of their withdrawal from the New York State health insurance program.
The amounts involved are:
Cohoes City School District $ 36,455
Greater Johnstown City School District 36,985
Perry Central School District 27,319
Alexandria Central School District 18,194
Belleville Central School District 11,696
General Brown Central School District 30,387
Henderson Central School District 5,832
Indian River Central School District 41,007
LaFargeville Central School District 10,004
Lyme Central School District 10,673
Sackets Harbor Central School District 14,567
Thousand Islands Central School District 27,938
Watertown City School District 107,153
The contention of plaintiff and plaintiff-intervenors is that since the March 25, 1977 control date referred to in subdivision b of section 8 of chapter 71, antedated both the enactment and effective dates of chapters 55 and 71, they were compelled to enter into the challenged agreement with the Department of Civil Service to avoid a loss of State aid and that by reason thereof they received part of their State aid in the form of loan repayable upon demand whereas school districts who were not subscribers to the health insurance plan as of March 25, 1977 enjoyed a full measure of State aid for the ensuing year in compliance with the save-harmless provisions of chapter 71.
*585 The enactments are alleged to be so repugnant to each other that apart from the other arguments advanced, this court should in any event determine that chapter 71 repealed chapter 55.
Subdivision b of section 8 of chapter 71 provides: “Notwithstanding the provisions of subdivision one of section thirty-six hundred nine of the education law, the commissioner of education shall reduce the apportionments to each school district in the school year commencing July first, nineteen hundred seventy-seven during the fall of such year in accordance with a schedule adopted by the commissioner of education, with the approval of the director of the budget, in an amount not to exceed the amounts received by each such school district as a distribution from the health insurance reserve receipts fund pursuant to a chapter of the laws of nineteen hundred seventy-seven. If a school district eligible as of March twenty-fifth, nineteen hundred seventy-seven to receive distributions from the health insurance reserve receipts fund elects not to receive distributions at the time such distributions are made, or if a school district files with the department of civil service after March twenty-fifth, nineteen hundred seventy-seven a notice of intent to leave the New York State government employee health insurance plan, the commissioner of education shall deduct from such apportionments to such school district the amount which such district would have been eligible to receive. If, however, a school district has filed with the department of civil service by March twenty-fifth, nineteen hundred seventy-seven a notice to leave such health insurance plan and does leave such plan by June second, nineteen hundred seventy-seven, then such district shall not be entitled to distributions from the health insurance reserve receipts fund nor shall the commissioner of education deduct from state aid apportionments to such school district an amount equal to that which the district would have received had it remained in such plan.” (Italics supplied.)
DID CHAPTER 71 EFFECT THE REPEAL OF CHAPTER 55?
Movants argue that the provisions of chapter 71 supersede and impliedly repeal the enactment in chapter 55 (State Finance Law, § 99-c) which set forth conditions *586 under which the funds of HIRRF distributed to the school district must be returned.
In Board of Educ. v Regan (107 Misc 2d 37) Special Term supported that view and held that the plaintiff school board had no obligation to reimburse the HIRRF or the State for the payment received by it in 1977. That decision is now on appeal in the Fourth Department.
More recently on August 6, 1981 in four actions commenced in other up-State counties, Special Term, Albany County, commented favorably on the Syracuse case and granted a preliminary injunction enjoining the New York State Department of Civil Service from demanding repay-. ment of sums received from the HIRRF even though they had withdrawn from the State insurance plan (Board of Coop. Educational Servs. v Regan, Supreme Ct, Broome County; Owego-Appalachian v Regan, Tioga County; Oxford Academy v Regan, Chenango County; Johnson City Cent. School Dist. v Regan, Broome County).
The theme of both decisions is that it was not intended that school districts participating in HIRRF funding should realize less State aid than those who did not participate in the health insurance plan and further that it was not intended that the State should reap a profit upon default.
Nevertheless this court holds chapter 55 was not repealed.
The general rule is that repeals by implication are not favored. While it is within the power of the Legislature to repeal a law immediately after its enactment it is not the usual practice for the Legislature to repeal an act passed during the same session and it is reasonable to suppose that such intent would not be left to implication. “The presumption is strong that the Legislature would not repeal an act which is fresh in their minds, without making an express reference to it, and the general rule that repeals by implication are not favored, applies with particular force as between two statutes passed at the same session of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 393).
*587 Moreover section 100 of the General Construction law provides: “No provision of any chapter of the consolidation of the general laws, of which this chapter is a part, shall supersede or repeal by implication any law passed at the same session of the legislature at which any such chapter was enacted, or passed after the enactment of any such chapter and before it shall have taken effect; and an amendatory law passed at such session or at any subsequent session begun before any such chapter takes effect, shall not be deemed repealed, unless specifically designated in the repealing schedule of such chapter.”
While these rules are not immutable, they will be strictly adhered to unless two statutes are so totally repugnant to each other that the first must be regarded as repealed by the latter expression on the subject by the Legislature (People ex rel. Pierce v Howe, 218 App Div 273; Coxe v State of New York, 144 NY 396).
In the instant case the two chapters were enacted on the very same day. The different effective dates recognized that State budgetary provisions must be in place as of April 1 of each year while school financing has a control date of July 1. These enactments were by separtate chapters with no intent to have one act as a chapter amendment of the other.
In fact, an analysis of both enactments indicate a harmony of purpose. Chapter 71 (§8, subd b), quoted above, provides for a loss of State aid if the school district does not accept a distribution from the HIRRF thereby placing that body in no better position than one who accepts the distribution and pursuant to the provisions of chapter 55 is later required to return some or all of that portion of the aid it represents.
The chapters were intended to compliment each other in a way designed to limit the use of tax dollars.
Certainly two enactments on the very same day belie any intent to repeal one or the other and compel a rejection of any claim of repeal by implication (General Construction Law, § 100).
THE CONSTITUTIONAL ISSUE
The Attorney-General citing several cases including Matter of Jeter v Ellenville Cent. School Dist. (41 NY2d *588 283), urges that the school boards as creatures of the State do not have the substantive right to raise constitutional issues with respect to the legislation under review.
The cited cases do hold that school boards are the creation of the State for existence and performing their function subject to the control and direction of the State under the Department of Education through its commissioner (Board of Educ. v Allen, 27 AD2d 69, affd 20 NY2d 109, affd 392 US 236). They further hold that creatures of the State may not challenge a State statute unless they would thereby be forced to violate a constitutional proscription (Matter of Jeter v Ellenville Cent. School Dist., supra; City of New York v Richardson, 473 F2d 923, cert den sub nom. Lavine v Lindsay, 412 US 950; Williams v Mayor, 289 US 36).
But the principle should not be applied to immunize the State against selective financing of school systems in violation of the equal protection clauses contained in the United States and New York State Constitutions.
Consideration must be given to the applicable standard of review. There is no suspect class involved in this case and notwithstanding the New York State constitutional mandate for a free education for all children (NY Const, art XI, § 1), the issue presented here is not such a fundamental constitutional right as to be entitled to require the application of a strict scrutiny test (Matter of Levy, 38 NY2d 653, 658, citing San Antonio School Dist. v Rodriguez, 411 US 1, 16).
Movants do not challenge this view but urge that the court adopt the “sliding-scale test” as recognized in Alevy v Downstate Med. Center of State of N.Y. (39 NY2d 326), which required preliminarily a determination that the preferential treatment satisfies a substantial State interest.
The sliding-scale test reflects a judicial effort to find a middle ground between strict scrutiny referred to above and the traditional rational basis test (Matter of Levy, supra).
If there is discrimination in the instant case it is devoid of improper motive and is in the language of Alevy (supra, at p 337), a “benign discrimination”.
*589 Since no cogent reason has been advanced for the application of the middle tier scrutiny, this case should be determined after due inquiry as to whether there was a rational basis for the distinction between school districts which remained in the health plan after March 25, 1977 and those who withdrew prior to that date (cf. Riley v County of Monroe, 43 NY2d 144).
Was there a rational basis for the distinction drawn between school districts based upon participation in the health insurance plan as of March 25, 1977? Did that distinction justify the legislation reflected in both chapter 55 and chapter 71?
These are questions of fact which cannot be determined on a motion for summary judgment.
To the extent that the movants seek a judgment declaring the statutes as unconstitutionally vague, their application is denied. Statutes must be construed to preserve their constitutionality, if at all possible (Matter of Seitz v Drogheo, 21 NY2d 181).
The delegation of power to the Civil Service Commission to draw suitable agreements covering a variety of circumstances under which the HIRRF would have to be replenished does not fail for want of standards or guidelines.
A precise formula need not be furnished. There need be only standards or guides as may be reasonably practicable in the light of the complexities in the particular area (Matter of Levine v Whalen, 39 NY2d 510, 515).
THE AGREEMENT
In August of 1977 each of the movants entered into an agreement with the Department of Civil Service pursuant to chapter 55 which read in part as follows: “The participating employer agrees that if called upon by the department to return the amount, or part thereof, transmitted to it pursuant to this agreement in the event the contractual agreement between the department and the participating employer for Health Insurance is terminated, or for any other reason, it shall transmit the amount due within thirty (30) days of receipt of a notice calling for such return.” (Italics supplied.)
*590 They argue with some merit that they were obliged to accept the agreement in the form submitted to receive the funds necessary to maintain their fiscal integrity.
The agreement is challenged as broader than the statutory limitations especially with respect to the italicized clause “or for any other reason”.
The critical phrase does not seem to be justified by either of the enactments under scrutiny.
However, with respect to the 13 intervenors this issue is moot since they withdrew from the health insurance plan and are not affected by any other provision of the agreement.
The plaintiff Deer Park Board of Education has not yet withdrawn and faces the possibility that demand may be made upon it for any reason to return the funds.
However, the issue may be- mooted by the lapse of more than four years since the parties entered into the agreement. Further, there may be some issue of fact as to whether the school board acted under duress — which can be resolved at a trial.
The motion of plaintiff and plaintiff-intervenors for summary judgment is denied.