OPINION OF THE COURT
Arthur M. Cromarty, J.
Respondents, the Board of Assessors and the Board of Assessment Review of the Town of Islip, seek to preclude the petitioner, 480 Suffolk Realty Corp., from selecting sample parcels pursuant to section 720 (3) of the Real Property Tax Law (RPTL) ("stratified random sample”). Movants also seek summary judgment on the issue of inequality by declaring • that the level of assessment indicated by the State equalization rates for the years at issue shall be prima facie evidence of the level of assessment in the Town of Islip for the years at *465 issue. Movants further seek summary judgment pursuant to CPLR 3212 (e) on the ground that RPTL 720 (3) (b) (1) ("stratified random sample”) is not applicable to the within proceedings. The motion is denied in all respects.
Before considering the merits of the motion, reference must be made to the length of time the motion has been pending. The original return date was August 6, 1987. There followed a series of conferences between the court and counsel exploring procedures, disposition.and the designation of an expert to make a random selection of parcels. An expert was selected, but after a period of time he declined to serve necessitating the canvass and selection of another expert. All of the foregoing consumed a period of some seven months before final argument and submission.
These proceedings were commenced in 1978, 1979, 1980, 1981, 1983, 1984, 1985 and 1986 and are consolidated. Petitioner seeks to show, in the underlying proceeding, that their property has been overassessed for the years in question.
Movants first claim that petitioner has had an opportunity to move forward with the issue of inequality since 1978 and that it has delayed doing so. This delay, movants assert, was purposeful and prejudicial resulting from the enactment of Laws of 1986 (ch 679) which changed the method of proving an overassessment to a method more favorable to petitioners than the prior method(s).
A short review of the background of RPTL 720 will clarify the questions placed before the court by this motion.
Prior to 1985, taxpayers were authorized to utilize any one of three methods to prove an overassessment:
1. the select parcel method (where the assessor and taxpayer select the parcels used as comparisons to the contested assessment);
2. the sales survey method (where recent sales records were used); and
3. the equalization rate method (where the taxpayer compared his last assessment to the equalization rate).
Laws of 1985 (ch 878) eliminated the sales survey method and provided for random samples as part of the select parcel method. Chapter 878 expired on June 30, 1986 and Laws of 1986 (ch 679) amended Real Property Tax Law § 720 (3) to eliminate the sales survey method and provided instead for stratified random samples as part of the select parcel method. This was the ninth time the statute had been amended in the preceding 12 years. The statute by its own terms provided that it "shall be exclusively applicable to all proceedings heretofore commenced and not finally determined as of the effective date hereof, and to all proceedings hereafter com *466 menced.” (L 1986, ch 679, § 3, eff retroactive to July 1, 1986.)
For purposes of determining stratified random samples, real property is classified into major types. In all assessing units for rolls completed before January 1, 1982, property is classified as residential, farm, forest and vacant, public utility and all other. In a stratified random sample parcels from each of the above classifications are randomly selected (i.e., each parcel has an "equal opportunity to be selected” for purposes of comparison with the contested assessment). The parcels selected from each major property type make up the total sample. In the case at bar, petitioner compiled a stratified random sample of 134 parcels while respondent’s proposed stratified random sample consists of 8,996 parcels. The statute (RPTL 720 [3]) gives no indication of how many parcels (or what percentage of parcels) should be included in the stratified random sample, but provides for the court or Referee to select a qualified expert, "who shall devise such methods and select the parcels to be appraised”. (RPTL 720 [3] [b] [1].) By order of this court dated February 11, 1988, a qualified expert has been chosen.
Movants, in their first request for relief, contend that petitioners intentionally awaited the enactment of the present ratio statute so as to gain a mbre favorable sample.
The court finds this argument specious, with no underlying support in the papers submitted, but rather the outgrowth of mere conjecture and surmise submitted in a conclusory, not evidentiary fashion.
The legislation, by its own terms, specifically applies to all pending proceedings in recognition of the abundant problems possessed by previous sampling methods. Further, even if petitioners were clairvoyant and knew this legislative change was about to be enacted, there is no showing by movant that the legislation is more favorable to petitioner than the prior statute. In fact, a convincing argument could be made that the new legislation is less favorable to petitioner’s position.
Movants’ last three allegations are composed around the conclusion that RPTL 720 (3) is unconstitutional as it deprives the parties of their right to due process of law and equal protection under the laws as guaranteed by the Fourteenth Amendment of the US Constitution and article I, § 11 of the NY Constitution. Respondents claim that the method of proving inequality is so prohibitively expensive, that, in effect, New York State has abolished the right to contest and the ability to defend against an allegation of inequality in an RPTL article 7 proceeding.
Movants, in support of their proposition of unconstitutional *467 ity, survey three arguments they feel conclusive on this point. First, movants assert that the cost of appraising their stratified random sample would be $26,898,000. If the petitioner’s sample was chosen, it would cost $402,000. Movants further point out their possible liability, at the court’s discretion, for petitioner’s costs.
Next, respondents contend that Laws of 1986 (ch 858) amended the small claims procedure permitting a challenge in excess of $750 without the need to present an expert witness or be represented by counsel and further permitting evidence of the most recent equalization rate established by the assessing unit, as well as the residential assessment ratio promulgated by the State Board of Equalization and Assessment pursuant to RPTL 738. This, movant contends, enables some taxpayers to challenge the assessment at minimal expense while forcing others to such great expense that it is impossible to go forward or defend such a proceeding.
Lastly, respondents point to the provision of RPTL 730 (3) which permits persons who want to challenge their assessments in the City of New York and the County of Nassau (which are designated as "special assessing units” in RPTL art 18) to only use stratified random samples derived from parcels selected only from the major class of property in which the property under review is classified. Naturally, the cost of a stratified random sample from just 1 out of 5 categories would be less expensive. Thus, respondents contend, the Legislature has made an unconstitutional distinction between "special assessing units” and other assessing units.
Prior to the determination by this court of the constitutionality of the statute in question a threshold issue, raised by both petitioner and the Attorney-General of the State of New York, must be determined. Do respondents lack standing to attack the constitutionality of Laws of 1986 (ch 679)?
A municipality is subject to control by the State. While it cannot challenge a reduction of its governmental powers by the State (see, Black Riv. Regulating Dist. v Adirondack League Club, 307 NY 475) it can challenge regulation of nonministerial acts which it considers unconstitutional. (Board of Educ. v Allen, 27 AD2d 69, affd 20 NY2d 109.) In addition, a municipality may challenge a statute which affects its ownership of funds or property, or an expressly defined statutory duty (County of Albany v Hooker, 204 NY 1; City of New York v Town of Colchester, 66 Misc 2d 83).
Movants have cited a number of cases relevant to the issue of standing. However, the court finds them unpersuasive for the following reasons:
*468 In People ex rel. Buffalo & Fort Erie Pub. Bridge Auth. v Davis (277 NY 292) the New York Court of Appeals struck certain real property from the assessment rolls of the City of Buffalo pursuant to a State statute which provided such property would be exempt from local taxation. While the constitutionality of the State statute was an issue, it was raised by the governmental agency as a defense to* a writ of mandamus, not as an affirmative challenge to a ministerial act, as confronts this court in the case at bar.
In Matter of Scales v Board of Educ. (41 Misc 2d 391), another proceeding in the nature of mandamus, petitioner sought an order requiring a Board of Education to provide home teaching for an infant. The Nassau County Supreme Court, recognizing divergence of authority, states the question as follows: "does a civil division of the State, in defending against a mandamus proceeding based upon a State statute, have standing to attack that statute as unconstitutional?” (Matter of Scales v Board of Educ., supra, 41 Misc 2d, at 393.) The court cited no authority for its affirmative answering of this proposition except for People ex rel. Buffalo & Fort Erie Pub. Bridge Auth. v Davis (supra), discussed above, and limits the challenge to constitutionality to defense of a mandamus proceeding, again not present in the case at bar.
Lastly, in City of New York v Town of Colchester (supra), the Supreme Court, New York County, permitted New York City to challenge the constitutionality of a State statute which imposed upon the city the obligation to remove snow and to sand highways around its reservoirs located beyond its city limits. Thus, the City of New York was challenging as unconstitutional a State statute which affected property which the City of New York owned. The property in question, in the case at bar, is owned by the petitioner and not the municipality.
In support of the position that respondents do not have standing to attack the constitutionality of Laws of 1986 (ch 679) the Attorney-General of the State of New York and the petitioner cite numerous cases that this court finds persuasive. (Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283; Matter of City of New York v Christiansen, 58 NY2d 884, affg 85 AD2d 663.) These cases do not permit the municipality to attack the constitutionality of a State statute where the municipality is performing a ministerial duty.
Reiterating by way of exclusion the few exceptions permitting constitutional attack: the case at bar, which concerns a *469 statute establishing a method of proof in real property tax review, is not an instance where if respondents complied with the State statute they would by that very compliance be forced to violate a constitutional proscription (Matter of Jeter v Ellenville Cent. School Dist., supra, at 287) nor does it involve real property which respondents own (City of New York v Town of Colchester, supra) nor does it pertain to a nonministerial duty (Board of Educ. v Allen, supra). The court, therefore, finds movant lacks standing to challenge the constitutionality of Laws of 1986 (ch 679).
Accordingly, the motion is denied.